644 So.2d 59 (1994)
Henry GARCIA, Appellant,
v.
STATE of Florida, Appellee.
No. 78411.
Supreme Court of Florida.
August 11, 1994.
Rehearing Denied October 25, 1994.
*60 Anthony C. Musto, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Fariba N. Komeily, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Henry Garcia appeals his convictions on two counts of first-degree murder, one count of sexual battery, and one count of armed burglary, and the sentences for each offense including two sentences of death. We have jurisdiction pursuant to article V, section 3(b)(1), of the Florida Constitution. For the reasons expressed, we affirm Garcia's convictions and sentences.
The record reveals that two elderly sisters, eighty-six-year-old Mabel and ninety-year-old Julia, an invalid, shared a house in a residential area in the Leisure City area of Homestead, Florida. On Monday morning, January 17, 1983, neighbors became concerned when the two sisters failed to answer the phone. Several neighbors gathered at the sister's house and began to knock on the door and windows. As the neighbors proceeded around the house they discovered that the screen door at the back of the house was slashed and that several panes from the jalousie door were broken. One of the neighbors pushed his way in through the door and found the bloody bodies of the sisters in the back bedrooms. Mabel's body was found against the wall in her bedroom. The body was in a sitting position, as if Mabel had been cornered. An examination revealed fourteen stab wounds on the body and nine defensive-type wounds on the arms and hands. Julia's body was found on the floor of her bedroom face down with her legs spread apart. There were thirty stab wounds on her body, including twelve defensive injuries. In addition, the medical examiner testified that, due to injuries to her vagina and anal canal, it was clear that a sexual battery had occurred on Julia while she was alive.
Based on his examination and other evidence at the crime scene, the medical examiner testified that the two sisters had died in the early morning hours of Sunday, January 16, 1983. This time frame was corroborated by the testimony of a neighbor who lived directly behind the sisters and who stated that she had been awakened at 6 a.m. on the 16th by the sound of breaking glass.
The State produced the following evidence, most of which was circumstantial, to establish Garcia as the perpetrator of these offenses. Feliciano, a social and work acquaintance of Garcia's, was a crew chief who worked the crop fields in South Dade County. He lived with his mother, father, wife, and children in a house that was half a mile away from Mabel and Julia's house. Garcia, *61 at that time, lived with other family members in a South Dade County labor camp, which was approximately twelve miles away. On the evening of January 15, 1983, Feliciano and Garcia went to a pool hall and played pool for a while before they returned to the South Dade County labor camp where Garcia was to have a date with a young lady. The young lady, however, decided to go out with someone else and Feliciano testified that Garcia became upset and asked Feliciano to take him back to Leisure City, which was not far from either the victim's house or Feliciano's house. Feliciano dropped off Garcia at the Leisure City Lounge, but, before doing so, tried to convince Garcia to go back home that evening.
Feliciano's mother testified that at about 7 a.m. on the morning of the murders, she looked out her bathroom window and saw Garcia running toward her house. Garcia was coming from the direction of the victim's house which was only about one-half mile away. She testified that when Garcia knocked on her door and asked for her son he was covered with blood. The son, Feliciano, also testified that Garcia was covered with blood that morning and added that the blood was fresh. When Feliciano asked Garcia what had happened Garcia stated that he had been walking in a field about ten miles away, that he was attacked by two men and a woman, and that he had stabbed the woman with his knife in self-defense. Garcia then showed Feliciano his knife which was covered with drying blood. Feliciano testified that Garcia did not appear to have been in a fight because he had no injuries and no dirt on his clothing.
Feliciano agreed to drive Garcia back to the labor camp where he was staying. On the way Garcia kept repeating, "I told them not to get me mad. I have this animal inside of me." Garcia did not explain what he meant and Feliciano did not ask. Later that day Feliciano and his mother drove to the spot in the field where they believed Garcia had been attacked but could find no tire marks in the dirt nor evidence of a struggle.
The State also presented the testimony of one of Garcia's co-workers regarding statements Garcia made about the murders. The co-worker testified that in January, 1983, she was working in the fields with Garcia when she overheard him speaking with a group of men. According to the co-worker, Garcia admitted getting into trouble with some women and that he did not have to worry about them because the women were "already in hell." When one of the men asked how Garcia did it, he responded, "I went through the back door and I ripped out the screen door." In rebuttal, the defense introduced into evidence payroll records that indicated that Garcia was not working at the time he allegedly made the incriminating statements.
The jury found Garcia guilty as charged of two counts of first-degree murder, one count of sexual battery, and one count of armed robbery. In the penalty phase, the State presented evidence of: (1) Garcia's conviction for assault with intent to rob in 1968; (2) a conviction in May of 1972 for the crime of bank-robbery and use of a dangerous weapon; (3) a conviction of the offense of mutiny at a United States penitentiary in January of 1979; and (4) a conviction of the crime of aggravated battery with the use of a deadly weapon in the state of Texas on July 1, 1983. The State further put on the testimony of the medical examiner explaining the type of wounds and the pain suffered by the victims in this case. Garcia chose not to present any evidence in the penalty phase and expressly declined to present evidence that his codefendant had received two life sentences for his role in the murders.
The trial judge followed the jury's unanimous recommendation and sentenced Garcia to death for the murder of Julia. In the sentencing order, the trial judge found four aggravating factors[1] and no mitigating factors. *62 The jury however recommended a life sentence for the murder of Mabel, but the trial judge overrode that jury recommendation and, relying on the same four aggravators and absence of mitigators, sentenced Garcia to death for the murder of Mabel. In this appeal Garcia raises twelve issues pertaining to his convictions and sentences.

Guilt Phase
We find it appropriate to discuss four of Garcia's claims arising from the guilt phase of the trial. In his first guilt phase issue, Garcia asserts that the trial court erred in denying his motions for judgment of acquittal on the murder, sexual battery, and armed burglary charges. Although this case was based substantially on circumstantial evidence, we find that the evidence was "inconsistent with any reasonable hypothesis of innocence," Jaramillo v. State, 417 So.2d 257, 257 (Fla. 1982); McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977), and that the trial judge did not err in denying the motions.
Second, Garcia claims that the trial court erred in reading some portions of the trial testimony to the jury and in failing to read other portions. The record reflects that after the jury retired for deliberations there were three instances in which the jury asked to have portions of the trial testimony read to them. The trial judge considered the requests, determined which portions of the testimony were relevant to the request and which portions were not relevant, corrected a transcription error, and then responded to the jury's request. After having reviewed the relevant portions of the transcript, we find no error or abuse of discretion on the part of the trial judge. The portions of the testimony read to the jury were directly related and responsive to the jury's interrogatory; they were not misleading and did not place undue emphasis on any particular statements. See, e.g., Haliburton v. State, 561 So.2d 248, 250 (Fla. 1990) ("We find no abuse of discretion where the trial judge rereads the testimony specifically requested by the jury and that testimony ... is not misleading."), cert. denied, 501 U.S. 1259, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991).
Third, Garcia claims that the trial court erred in allowing the prosecutor to introduce inadmissible and prejudicial hearsay. At one point in the trial, in order to rebut Garcia's story that he had been attacked by two men and a woman and that he had stabbed the woman, the prosecutor elicited testimony from a detective that he had checked with area hospitals and found no record of a woman's being treated for stab wounds around the date of the murders. Defense counsel's objection on hearsay grounds was overruled by the trial judge. Although we doubt that such testimony violates the hearsay rule at all,[2] we find that, even if this testimony was inadmissible hearsay, any error in admitting it was harmless beyond a reasonable doubt. There was sufficient evidence other than this allegedly improper testimony to disprove Garcia's story about the attack in the field, and the remaining evidence of guilt was overwhelming. We likewise find that Garcia's other examples of allegedly improper hearsay testimony were of such a collateral nature that any error would be harmless beyond a reasonable doubt.
Fourth, Garcia claims that prosecutorial misconduct throughout the trial deprived him of a fair trial  a claim that is based primarily on statements made by the prosecutor during closing arguments. Although Garcia's appellate counsel strenuously denounced the prosecutor's closing statements at oral argument before this Court, we find that the claims concerning the statements Garcia finds most objectionable are procedurally barred for lack of a contemporaneous objection. See, e.g., Steinhorst v. State, 412 So.2d 332, 339 (Fla. 1982). Even if these statements were preserved for review *63 we find that, after a thorough review of the record, particularly the final arguments of both counsel, Garcia was not deprived of a fair trial. Although the complained-of statements were clearly improper when read out of context, these comments must be considered as a response to defense counsel's direct comments against the prosecutor, whom defense counsel had accused of using this prosecution to attain her ambitions and build a reputation for herself. We also find the remaining claims of prosecutorial misconduct that had been preserved for appellate review are either without merit or harmless beyond a reasonable doubt.
We have fully examined Garcia's remaining guilt phase claims and find them to be without merit.[3]

Penalty Phase
Garcia challenges each of the four aggravating circumstances found by the trial judge in his sentencing order. The trial court found: (1) this capital felony was committed by a person under a sentence of imprisonment (at the time of the killing Garcia was on parole from the federal penitentiary); (2) the defendant was previously convicted of another capital felony or of a felony involving a threat of violence to the person ("defendant was convicted in Texas state court of assault with intent to commit robbery on May 14, 1968, was convicted in Texas federal court of bank robbery with a dangerous weapon on May 25, 1972, was convicted of instigating and attempting to cause mutiny while serving time at the federal penitentiary at Leavenworth, Kansas, on January 8, 1979, and was convicted in Texas state court of aggravated robbery on July 1, 1983"); (3) the capital felony was committed while the defendant was engaged, or was an accomplice in the commission of or an attempt to commit any sexual battery ("The evidence clearly showed that this woman's anus and vagina were penetrated prior to her death most likely by an object [] consistent with a knife."); and (4) the capital felony was especially heinous, atrocious, or cruel (explaining in detail the wounds and suffering of each victim). The evidence clearly supports the trial court's finding of each aggravating factor for each victim.
Garcia also claims that the trial court erred in failing to find any of the following mitigating circumstances: (1) defendant was under the influence of extreme mental or emotional disturbance; (2) defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired; (3) defendant's consumption of beer; (4) defendant's exemplary prison record; (5) the alternative to the death penalty was life in prison without chance of parole for fifty years; (6) lack of premeditation; (7) defendant's employment; (8) defendant's peaceful nature; (9) codefendant sentenced to life in prison; and (10) defendant had no significant history of prior criminal behavior.
The record establishes that the trial judge expressly addressed and rejected the extreme mental and emotional disturbance factor, as well as the defendant's capacity to appreciate the criminality of his conduct. Further, the trial judge could properly find from the evidence that there was insufficient evidence of intoxication to establish that as a mitigating factor. Finally, we find that the trial judge did not err in rejecting the remaining alleged mitigating factors because the record does not support any of these factors. We note that defense counsel at trial expressly considered whether to place evidence before the judge and the jury concerning the sentence of the codefendant and, after consulting with Garcia, rejected presentation of that evidence for tactical reasons.
With regard to the claim of error for enhancing the sentences for sexual battery and burglary, we find that the trial judge had the authority to impose the enhanced sentences *64 for those two offenses upon this defendant under the circumstances of this case. We also find that the trial judge did not err in sentencing Garcia to death for the murder of Mabel despite the jury recommendation of life in prison. We note that the trial judge found the same aggravating and mitigating circumstances applied to the murders of both Julia and Mabel. We find that under the circumstances of this case no reasonable person could differ as to the appropriateness of the death penalty for the murder of Mabel. See Torres-Arboledo v. State, 524 So.2d 403, 413 (Fla.) ("[A]n override sentence of death will not be upheld unless the facts justifying a death sentence are so clear and convincing that no reasonable person could differ as to its appropriateness."), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988).
Accordingly, we affirm Garcia's convictions on two counts of first-degree murder, one count of sexual battery, and one count of armed burglary, and we affirm Garcia's sentences including his two sentences of death.
It is so ordered.
GRIMES, C.J., OVERTON and HARDING, JJ. and McDONALD, Senior Justice, concur.
SHAW, J., concurs in result only.
KOGAN, J., recused.
NOTES
[1] The trial court found the following aggravators were proven beyond a reasonable doubt: (1) the capital felony was committed by a person under a sentence of imprisonment, § 921.141(5)(a), Fla. Stat. (1991); (2) the defendant was previously convicted of another capital felony or of a felony involving a threat of violence to the person, § 921.141(5)(b); (3) the capital felony was committed while the defendant was engaged in the commission of a sexual battery, § 921.141(5)(d); (4) the capital felony was especially heinous, atrocious, or cruel, § 921.141(5)(h).
[2] As stated by Professor Ehrhardt:

Technically, evidence of the absence of a record is not hearsay under Section 90.801. The record is not being offered to prove the truth of any fact contained in the record but rather is being offered as a basis of an inference of the fact of non-occurrence. However, to make certain that there would be no dispute as to the admissibility of a business record to prove the non-occurrence of an event, Section 90.803(7) was included in the Code.
Charles W. Ehrhardt, Florida Evidence, § 803.7 (1989) (footnote omitted).
[3] In addition to the issues discussed in this opinion, Garcia has also raised the following claims: (1) the trial court erred in instructing the jury as to the elements of the offenses charged; (2) the trial court erred in admitting and allowing the improper use of inflammatory photographs; (3) the trial court erred in allowing the State to prove the falsehood of Garcia's alibi story; (4) the trial court erred in instructing the jury on circumstantial evidence; (5) the trial court erred in excusing a juror based on the juror's inconsistent and inconclusive comments regarding the death penalty; (6) the cumulative effect of the guilt phase errors mandates reversal.