700 So.2d 743 (1997)
STATE of Florida, Appellant,
v.
Robert ANTON, Appellee.
Robert ANTON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-03927.
District Court of Appeal of Florida, Second District.
October 1, 1997.
Rehearing Denied October 28, 1997.
*745 Robert A. Butterworth, Attorney General, Tallahassee, and Tonja R. Vickers, Assistant Attorney General, Tampa, for the State of Florida.
M.D. Purcell, Tampa, for Robert Anton.
PER CURIAM.
In these consolidated cases, the State of Florida appeals from an order granting Robert Anton a new trial for aggravated assault and attempted robbery with a firearm, and Anton challenges the judgment and sentences which were entered before the trial court decided to grant a new trial. For the reasons discussed below, we reverse the order granting a new trial, affirm the convictions and sentences, and direct the trial court to correct the judgment to reflect that attempted robbery with a firearm is a second-degree felony.
On December 27, 1995, the State charged Anton with aggravated assault and attempted robbery with a firearm arising out of an incident that occurred on December 9, 1995. At trial, Lloyd Campbell testified that, at the *746 time of the offenses, he was a security officer at The Preserve at Lake Thomas (the Preserve), a housing development under construction. Robert Pinson, the son of an investor in the Preserve, alerted Campbell to the presence of a white pick-up truck on the property. Campbell retrieved a pistol and the two men drove to the site of the truck. Campbell testified that when they approached the white pick-up truck, Anton was carrying lumber in his hands. At that point, Anton dropped the wood and Campbell asked him what he was doing. Anton responded, "You can help me load some wood." Campbell then asked Anton who he worked for, to which Anton responded in a hostile manner, "Go away, little boy, before you get yourself hurt." Campbell testified that at this point Anton reached under the seat of his vehicle and secured a firearm. Anton then accelerated his vehicle and headed toward Pinson. Campbell stated that Pinson "literally had to jump to keep from getting hit with the vehicle." Campbell indicated that Anton could have chosen to leave the Preserve by other escape routes.
Pinson testified that he saw Anton carrying lumber at the rear of the white pick-up truck. He stated, "When [Anton] saw us, he dropped [the wood]." Pinson was unaware of the severity of the situation until he saw Campbell draw his pistol. Although Pinson did notice Anton leaning forward to the floor of his truck, Pinson never saw Anton's firearm. Pinson exited his vehicle and, at that point, Anton drove in Pinson's direction with the pick-up truck. Pinson stated that it appeared Anton was aiming the truck at him and that he was going to get hit with the truck. He said the back of Anton's truck was fishtailing so close to him that he could touch it and indicated that the truck came within three feet of hitting him. Although he "scrambled around to get out of the way," Pinson was able to see the license tag number. He also stated that there were other avenues for Anton to escape. Both Pinson and Campbell testified that they were in fear for their lives during the incident.
Deputy William Moe testified that Campbell described the situation to him as a "standoff." The deputy testified that driving at the victim is a tactic used to put someone in fear so they will fail to pay attention to the license tag number. After the incident, however, Deputy Moe obtained the tag number from Pinson, arrested Anton, and advised him of his right to remain silent. When asked by the State whether Anton agreed to speak with the deputy, Deputy Moe testified, "Not really. At that point [Anton] did not want to." Anton did agree to talk to the deputy afterward. Anton's comments to the deputy suggested he intended to take the lumber, but had a change of heart. Deputy Moe testified that Anton said, "I'm not going to tell you that," when asked about whether he had a firearm in the truck.
Anton elected to testify in his defense. His version of events was that he saw a "Welcome" balloon and a sign near the Preserve that read "Walk our Nature Walk" and decided to take a look at the area to see if it would be a nice place for his girlfriend and children to visit during the holidays. However, his truck became stuck in the mud and he obtained some wooden boards that were on the property to use as leverage to remove his vehicle. At that point, Campbell approached him and said, "It looks like you're trying to steal lumber," to which Anton replied jokingly, "Only if you're going to help me load it." Anton testified that Campbell became "verbally aggressive" and pulled a pistol, after which Anton fled in fear. According to Anton, there was no other way to leave the Preserve without getting stuck in the mud. Anton stated that the first time he saw Pinson was in his rearview mirror.
Defense counsel asked Anton, "Did you ever tell Officer Moe that you weren't going to talk to him or you weren't going to tell him something?" Anton replied, "Never. I talked to him just like I would talk to anybody." Anton also stated that when the deputy asked if he had a firearm, he never said "I'm not going to tell you," but instead, he said, "I didn't have anything." The State then called Deputy Moe in rebuttal. The State asked the deputy if Anton told him that he saw a sign or balloon stating "Welcome, Nature Walk." The deputy testified "Never heard that." Deputy Moe further indicated that Anton did not tell him he got stuck in *747 the mud, Anton never said he procured the wood to remove his vehicle, and Anton did not inform the deputy that he was in fear because Campbell brandished a pistol. The deputy said, "The only thing [Anton] told me was that his attorney would not want him to say anything."
During deliberation, the jury asked the trial court to read back Campbell's testimony concerning Anton's possession of the firearm during the incident. Defense counsel objected to the trial court reading back this testimony, arguing that the trial court should reread either all testimony concerning the firearm or no testimony concerning the firearm. After reviewing Campbell's testimony, the trial court stated that there was no other applicable part of the cross-examination or redirect concerning the firearm. Defense counsel agreed but renewed his objection to reading back this testimony as placing undue weight on a narrow portion of the evidence. The trial court overruled the objection and read back the requested portion of Campbell's testimony.
On May 7, 1996, the jury returned a verdict of guilty as charged. On July 8, 1996, the trial court sentenced Anton as a habitual offender to ten years in prison for aggravated assault and thirty years in prison for attempted robbery with a firearm, including a three-year minimum mandatory term for use of a firearm. On July 9, 1996, Anton filed his notice of appeal of the judgment and sentences. Notwithstanding the pending appeal, on July 17, 1996, Anton, through substitute counsel, filed a motion for new trial. On August 28, 1996, the trial court granted the motion for new trial. After the trial court denied the State's timely motion for rehearing, on September 4, 1996, the State filed its notice of appeal of the order granting the motion for new trial.
We first address the State's appeal from the trial court's order granting a new trial. The State argues that the trial court acted outside its jurisdiction in granting the motion for new trial. Anton was required to file his motion for new trial within ten days after rendition of the verdict. See Fla. R.Crim. P. 3.590(a); Costello v. State, 246 So.2d 752 (Fla.1971), overruled in part on other grounds, State v. District Court of Appeal, First District, 569 So.2d 439 (Fla.1990); Richardson v. State, 540 So.2d 133 (Fla. 5th DCA 1989). Failure to file such a motion within the allotted time deprives the trial court of jurisdiction to rule on the motion. See Clifton v. State, 697 So.2d 1000 (Fla. 2d DCA 1997); Canty v. State, 402 So.2d 1232 (Fla. 5th DCA 1981). Anton filed his motion for new trial more than two months after the jury rendered its verdict. By granting a new trial, the trial court exceeded its jurisdiction. As a result, we reverse the trial court's order granting Anton a new trial.
With the resolution of the State's appeal, the only case remaining for review is the direct appeal of the judgment and sentences. Anton advances multiple grounds for reversal. First, he contends that the trial court erred in permitting Deputy Moe to comment on his right to remain silent. Even though the statements are fairly susceptible of being interpreted as comments on Anton's right to remain silent, defense counsel made no objections to any of the comments of the deputy, failing to preserve any potential errors. See Clark v. State, 363 So.2d 331 (Fla. 1978), overruled in part on other grounds, State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Wyatt v. State, 578 So.2d 811 (Fla. 3d DCA 1991). Therefore, Anton must establish fundamental error before we can review these comments. See Castor v. State, 365 So.2d 701, 703 (Fla.1978) ("Except in the rare cases of fundamental error ... appellate counsel must be bound by the acts of trial counsel."). At trial, the defense strategy was apparently to contradict Deputy Moe's testimony. As such, Anton testified that he talked to the deputy "just like [he] would talk to anybody," and that he told Deputy Moe that he did not have a firearm during the incident. Under the circumstances, we conclude that the comments of the deputy did not rise to the level of fundamental error. See State v. Rhoden, 448 So.2d 1013, 1016 (Fla.1984) ("The [contemporaneous objection] rule prohibits trial counsel from deliberately allowing known errors to go uncorrected as a defense tactic and as a hedge to provide a defendant with a second trial if the first trial decision is adverse to the defendant.")
*748 Second, Anton argues that the trial court committed reversible error by reading back the portions of Campbell's testimony relating to his possession of a firearm during the incident. Defense counsel agreed with the trial court that there was no other applicable testimony of Campbell concerning the firearm. The only other evidence relevant to this issue mentioned by defense counsel was the deputy's testimony "repeating what ... Campbell said about the gun." A trial court has discretion in determining whether to read back testimony to the jury. See Coleman v. State, 610 So.2d 1283 (Fla.1992); Haliburton v. State, 561 So.2d 248 (Fla.1990); Kelley v. State, 486 So.2d 578 (Fla.1986). The trial court here did not place undue emphasis on a portion of the evidence. The jury requested, and the trial court isolated, Campbell's testimony relating to a discrete element of one of the offenses. Campbell's statement to the deputy was consistent with his testimony at trial, thus serving to reinforce the testimony which was read back to the jury. Outside of Anton's denial that he possessed a firearm, there was no other witness testimony casting doubt on Campbell's observation. Further, the re-reading of this testimony was not misleading. See Garcia v. State, 644 So.2d 59 (Fla.1994); Haliburton, 561 So.2d 248. Accordingly, the trial court did not abuse its discretion.
The third argument advanced by Anton is that the State failed to establish evidence of the corpus delicti of attempted armed robbery without relying on inadmissible hearsay testimony and Anton's post-arrest statement to the deputy. "Corpus delicti" means "body of a crime." See Black's Law Dictionary 344 (6th ed. 1990). In Florida, the State must establish the corpus delicti independent of a defendant's confession before that confession may be admitted into evidence. See Bassett v. State, 449 So.2d 803 (Fla.1984). Defense counsel neither objected to the admission of any hearsay statements elicited from Campbell or Deputy Moe, nor argued failure to prove the corpus delicti at the end of the State's case. However, this court has held that failure to prove the corpus delicti apart from the defendant's confession is fundamental error that need not be preserved. See Johnson v. State, 569 So.2d 872 (Fla. 2d DCA 1990), review denied, 581 So.2d 167 (Fla.1990); but see J.B. v. State, 689 So.2d 360 (Fla. 1st DCA), review granted, No. 90,309, 697 So.2d 511 (Fla. June 20, 1997). As a result, we must determine whether the State presented sufficient evidence of the corpus delicti to warrant admission of Anton's statement to Deputy Moe.
The supreme court recently considered the requirement of proving the corpus delicti in the context of attempted armed robbery. See Franqui v. State, 699 So.2d 1312 (Fla. 1997). In that case, the court stated that "In order to prove corpus delicti, the State must establish that: (1) a crime of the type charged was committed, and (2) the crime was committed through the criminal agency of another.... With regard to the first partthat a crime was committed each element of the relevant offense must be shown." Id. at 1316. The elements of attempted armed robbery are: (1) formation of an intent to commit the crime of robbery, (2) commission of some physical act in furtherance of the robbery, and (3) use of a firearm. See §§ 777.04(1), 812.13(2)(a), Fla. Stat. (1995); see also Franqui, 699 So.2d at 1316. "In this context, intent may be proved by considering the conduct of the accused ... before, during, and after the alleged attempt along with any other relevant circumstances." Franqui, 699 So.2d at 1317.
The State is not required to prove corpus delicti beyond a reasonable doubt. See Bassett, 449 So.2d 803. "[I]t is enough if the evidence tends to show that the crime was committed." Frazier v. State, 107 So.2d 16, 26 (Fla.1958). Corpus delicti may be established by direct or circumstantial evidence. See State v. Allen, 335 So.2d 823 (Fla.1976). This standard does not require the proof to be "uncontradicted or overwhelming." Id. at 825. "The only question is whether the evidence of the corpus delicti is prima facie sufficient to authorize the admission of the confession." Frazier, 107 So.2d at 26. In the instant case, the testimony at trial, independent of any hearsay statements and Anton's statement to Deputy Moe, established the "body of the crime." The *749 evidence showed that Anton was carrying lumber to his vehicle. Anton dropped the lumber when he saw Pinson and Campbell approaching. At that point, Anton reached for a firearm and fled the scene, almost hitting Pinson in the escape. This evidence is sufficient to establish that Anton intended a robbery, committed a physical act in furtherance of the crime, and used a firearm during the offense. We therefore conclude that the State established a proper predicate for the admission of Anton's statement to the deputy.
We also hold that the introduction of Deputy Moe's testimony disclosing statements given by Campbell and Pinson during his investigation was not preserved for our review and does not rise to the level of fundamental error. We base our decision on the fact that these statements were cumulative to the testimony of those witnesses when they took the stand. Further, the statements made by the deputy at trial did not become a feature of the case. Accordingly, we conclude that any error did not go to the "foundation of the case or the merits of the cause of action." See Sanford v. Rubin, 237 So.2d 134, 137 (Fla.1970).
Anton's fourth contention is that the trial court erred in permitting Deputy Moe to testify that a perpetrator's act of driving toward a victim is a tactic used to prevent the victim from recalling the tag number of a vehicle. The State did not qualify the deputy as an expert witness before eliciting this statement. See § 90.702, Fla. Stat. (1995). However, defense counsel did not object to the admission of this testimony from Deputy Moe. We conclude that this unpreserved issue is not fundamental error. Cf. Slawson v. State, 619 So.2d 255, 258-259 (Fla.1993) (holding that trial court did not commit fundamental error where expert witness testified that insanity defense was a "charade"); Jones v. Wainwright, 473 So.2d 1244, 1245 (Fla.1985) (stating, in context of petition for habeas corpus, that appellant could not raise for first time on appeal sheriff's statement that "the killing of a police officer affects the ability of the police department to carry out its duties"); McQuirk v. State, 667 So.2d 441 (Fla. 5th DCA 1996) (holding that counsel must object to preserve error when expert improperly vouches for credibility of victim).
Fifth, Anton asserts that the jury instructions regarding the offense of attempted robbery with a firearm were confusing. Although the trial court may have used the term "robbery" when it should have used the term "attempted robbery" in a few instances, the clear majority of the trial court's references to the crime properly apprised the jury of the charged offense, namely, attempted robbery. Moreover, when the jury requested that the trial court re-read the elements of the charged offenses, the trial court correctly read the instructions and emphasized that the charged offense was attempted robbery. Thus, any potential errors were cured in the re-instruction of the charged offenses.
Anton also contends that the trial court erred by giving the following instruction over objection by defense counsel: "It is not unlawful for a person to possess firearms at his home or place of business, including surrounding property, as well as buildings and structures situated thereon." The State requested this instruction after defense counsel placed into issue Campbell's possession of a firearm while working at the Preserve. We conclude that this instruction was proper. See § 790.25(3)(n), Fla. Stat. (1995) (stating that it is lawful for a person to possess arms at his home or place of business); Peoples v. State, 287 So.2d 63 (Fla.1973) (holding that it is lawful for person who is a resident and employee of business establishment to possess concealed firearm on premises).
Finally, Anton argues that the trial court erred in reclassifying his conviction for attempted robbery with a firearm to a first-degree felony. Because the carrying of a firearm was an essential element of the charged offense, we agree that the trial court should not have reclassified the offense. See Williams v. State, 590 So.2d 526 (Fla. 2d DCA 1991). However, the trial court sentenced Anton to thirty years in prison as a habitual offender for attempted robbery with a firearm. The sentence is therefore proper as it is within the permitted range for a *750 second-degree felony under the habitual offender statute. See Ellis v. State, 608 So.2d 514 (Fla. 5th DCA 1992). Accordingly, we affirm Anton's sentences but direct the trial court on remand to correct the judgment and sentence to reflect that attempted robbery with a firearm is a second-degree felony.
Order granting new trial reversed; convictions and sentences affirmed; remanded with directions.
LAZZARA, A.C.J., and WHATLEY and NORTHCUTT, JJ., concur.