762 A.2d 647

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. TYRONE WILSON, DEFENDANT–APPELLANT.

Argued September 26, 2000—Decided November 20, 2000.

*Daniel V. Gautieri*, Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres*, Public Defender, attorney).

*Melaney S. Payne*, Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney).

PER CURIAM.

Tyrone Wilson was convicted of knowing and purposeful murder, contrary to *N.J.S.A.* 2C:11–3(a)(1) or (2), hindering apprehension, contrary to *N.J.S.A.* 2C:29–3b(1), and two weapons offenses, contrary to *N.J.S.A.* 2C:39–4a, –5b. He was sentenced to an aggregate term of life in prison plus fifteen years, thirty-seven and one-half years without parole.

Wilson appealed, challenging the propriety of the jury instructions; the procedures surrounding the readback of the testimony of several witnesses; the trial court's handling of a witness's outburst, and the length of his sentence. The Appellate Division rejected all of Wilson's arguments in a thorough and thoughtful opinion. 335 *N.J.Super.* 359, 762 *A.*2d 660 (1999). We granted his petition for certification, 163 *N.J.* 78, 747 *A.*2d 286 (2000), and we now affirm, substantially for the reasons expressed by the Appellate Division.

■ We add only this. The rules governing the readback of testimony are relatively straightforward. It is well-established that "the reading of all or part of the testimony of one or more of the witnesses at a trial, criminal or civil, at the specific request of the jury during their deliberations is discretionary with the trial court." *State v. Wolf*, 44 *N.J.* 176, 185, 207 *A.*2d 670 (1965) (citing *Higgins v. Polk*, 14 *N.J.* 490, 493, 103 *A.*2d 1 (1954)); *State v. Ciniglio*, 57 *N.J.Super.* 399, 403, 154 *A.*2d 845 (App.Div.1959), *certif. denied*, 31 *N.J.* 295, 157 *A.*2d 364 (1960); *accord United States v. Rabb*, 453 *F.*2d 1012, 1013 (3d Cir.1971) ("Normally, a request by the jury to have a portion of the transcript read back ... lies within the broad discretion of the trial judge.") (citing *United States v. Chicarelli*, 445 *F.*2d 1111 (3d Cir.1971)); *State v. Wilkerson*, 60 *N.J.* 452, 460, 291 *A.*2d 8 (1972) (noting that trial court has "ultimate discretion" on issue of readbacks); *State v. Richter*, 21 *N.J.* 421, 428, 122 *A.*2d 502, *cert. denied*, 351 *U.S.* 975, 76 *S.Ct.* 1039, 100 *L.Ed.* 1492 (1956); *State v. Rodriguez*, 234 *N.J.Super.* 298, 311, 560 *A.*2d 1233 (App.Div.1989) (holding that trial court has discretion to honor jury's request for readback of testimony, and that was not error to ask the jury to rethink its request because readback would take approximately two days), *certif. denied*, 117 *N.J.* 656, 569 *A.*2d 1350, 1351 (1989); *State v. Reddy*, 137 *N.J.Super.* 32, 37, 347 *A.*2d 545 (App.Div.1975).

■ However, that broad grant of discretion is not unbridled. For example, "where the testimony is reasonably available, a judge should not refuse to grant a jury request to have it read merely because the reading would take time.... [T]here is no just reason for insisting that laymen jurors must have an unfailing and unanimous memory of all the testimony they hear in the courtroom." *Wolf, supra*, 44 *N.J.* at 186, 207 *A.*2d 670.

■ Moreover, as a general rule, if a jury requests a readback of the testimony of a witness, the readback should include both direct and cross-examination. The reason is obvious: cross-examination affords a full view of the witness's testimony including inconsistencies and impeaching material. Thus, a jury's uncircum-

scribed request for a readback of a witness's testimony ordinarily is "presumed to include cross-examination." *People v. Jenkins,* 168 *A.D.*2d 315, 562 *N.Y.S.*2d 648 (1990) (citing *People v. Sepulveda,* 44 *A.D.*2d 846, 355 *N.Y.S.*2d 637, 639 (1974)) *appeal denied,* 77 *N.Y.*2d 878, 571 *N.E.*2d 91, 568 *N.Y.S.*2d 921 (1991); *accord People v. Faulkner,* 195 *A.D.*2d 384, 600 *N.Y.S.*2d 231, 232 (1993).

That is not to suggest that a witness's entire testimony is required to be read back in every single case. We assume that when jurors request a readback, what is being sought is "only . . . those portions of the testimony about which they are in doubt or disagreement." *Wilkerson, supra,* 60 *N.J.* at 460, 291 *A.2d* 8 (quoting *Wolf, supra,* 44 *N.J.* at 185, 207 *A.2d* 670). Accordingly, where a request is clearly circumscribed, the trial court has no obligation to compel jurors to hear testimony they have not asked for or to continue a readback after they have expressly indicated that they have heard enough. *State v. Garrigan,* 126 *N.J.Super.* 442, 446–47, 315 *A.2d* 415 (App.Div.1973) *aff'd o.b.* 64 *N.J.* 287, 315 *A.2d* 385 (1974). That is so even if one of the parties registers a request for a further readback. *Wolf, supra,* 44 *N.J.* at 186, 207 *A.2d* 670.

But if the scope of the jury's request is unclear or if something occurs during the readback to raise a question about the extent of the testimony sought, the obligation of the trial court is to ascertain the will of the jury. *State v. Middleton,* 299 *N.J.Super.* 22, 30, 690 *A.2d* 623 (App.Div.1997). For example, in this case, the jury did not initially limit its request to direct examination. However, at the end of the readback of the direct testimony of a witness, when the tape was stopped briefly, the reconstructed record reveals that the foreperson of the jury said something to the effect of "okay, fine," and the jurors got up to leave. The trial court and the lawyers took that as a signal that the jurors had heard enough, although defense counsel continued to argue that they should be "required" to hear the whole statement. To lay to rest any possible doubt regarding the meaning to

be ascribed to the jurors' words and actions, and for record purposes, it would have been preferable for the trial court to have asked the jury directly whether it wished to hear the cross-examination of the witness. Whenever there is the slightest doubt, such an inquiry should ensue. Because all of the participants agreed about the import of the jurors' words and actions in this case, the failure to inquire further was of no moment.

It goes without saying that every readback and the exchanges accompanying it must be recorded in full. *Eden v. Conrail*, 175 *N.J.Super.* 263, 289, 418 *A.*2d 278 (App.Div.1980), *aff'd* 87 *N.J.* 467, 435 *A.*2d 556 (1981); *see R.* 1:2–2. Indeed, much of the procedural maneuvering that occurred in this case could have been avoided had such recording occurred. The rules to which we have adverted are not complicated and should be followed in every case in which a readback is sought.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.