KHOUZAM, Judge.
John Albert Gormady appeals his judgments and sentences for possession of a firearm by a convicted felon, possession of a controlled substance, and possession of drug paraphernalia. Because the trial court erred by permitting the jury to hear a partial read-back of a key witness’s testimony which placed undue emphasis on particular- statements, we reverse and remand for a new trial. We find no merit in the other issues raised by Gormady.
Gormady was charged with possession of a firearm by a convicted felon, possession of a controlled substance, and possession of drug paraphernalia after a handgun, methamphetamine, and several pipes were found in a vehicle in which he was a passenger.[1] Following a trial, he was convicted of the charges and sentenced to a mandatory minimum term of three years in prison for possession of a firearm and possession of a controlled substance. The trial court sentenced him to time served for possession of paraphernalia.
I. The read-back of Detective Johnson’s testimony
Gormady first argues that the trial court erred by allowing the jury to hear a misleading partial read-back of Detective Bradley Johnson’s testimony. We agree. Detective Johnson, the State’s primary witness, testified that he pulled over a white truck with an expired license tag. Gormady was riding in the front passenger seat. Detective Johnson decided to issue a citation to the driver for the expired plate and, based on the driver’s anxious behavior, asked for permission to search the vehicle. The driver consented. On the passenger’s side of the vehicle, Detective Johnson found a bundled up T-shirt. The detective maintained that he found a small handgun in the T-shirt, but the defense disputed whether the firearm was found wrapped inside the shirt as the detective did not memorialize this fact in his either of his two police reports. Detective John *549 son also found a silver pipe, a pack of cigarettes, and a small red bag bundled in the shirt. The cigarette pack contained a plastic baggie with a crystal-like substance. Three more pipes were found inside the small red bag. The baggie and pipes later tested positive for methamphetamine. Detective Johnson separated the driver and Gormady and placed them in handcuffs: Detective Johnson read Gor-mady his Miranda[2] rights, and Gormady incriminated himself.
After the State and defense presented their respective cases, the jury went into deliberations. At somé point, the jury submitted the following request: “Gan we have a copy of the defendant’s interview with the detective? — or the reporter’s recording of the defendant’s presumed interview/confession per the detective.” ' The court discussed the matter with the attorneys:
THE COURT: The answer to the first question is no. All the evidence has been presented that they can look at.
The second one says the reporter’s, they might be referring to our court reporter, and they’re asking for the detective’s testimony regarding what the defendant said.
My thought is that there were several, both, on direct and cross — maybe more than several times the detective stated what the defendant said.
The court then asked the court reporter how long it would take to prepare the transcript of Detective Johnson’s testimony. The court reporter stated that it would take thirty to forty-five minutes to prepare the transcript and forty minutes to read the transcript. When, the trial court asked if there was any objection to informing the jury of how long the transcript preparation would take, the following discussion between defense counsel and the trial court transpired:
[DEFENSE COUNSEL]: I just don’t know what part of it is considered the defendant’s presumed interview. I think in cross I jumped around back and forth on what he said my client’s admission is. So are we going to chop up my cross when the Court. Reporter confronts or runs into something that’s related to the statements?
THE COURT: No. My intention was to have her. read back the entire testimony of this witness.
[DEFENSE COUNSEL]: Full direct, full eross?
THE COURT: Yes,
[[Image here]]
The COURT: Here’s what I’m going to do. I’m going to let the jurors know what exactly time-wise it will take, which is a half hour for the court reporter to be able to prepare to do that, and then they would bring them back into the court room to read that testimony in its entirety, which would take — which will be about an hour-and-a-half is our recollection of that.
So I’ll send them back after that into the jury room to continue deliberating, while we’re setting that up. And they can decide if that’s what they still intend to do; okay?
However, when the trial court brought the jury back in, it instead instructed them as follows:
[T]here were several times throughout [Detective Johnson’s] testimony this morning where the defendant’s statements were discussed, both. on direct and cross and I believe on redirect.... [Y]ou could hear it again, the entire *550 testimony of this witness, unless at some point you want to stop and it’s been completed.
But again, in talking to the attorneys it appears that your questions, both in direct and cross this discussion was going on, so there’s not just one spot that we can go to.
(Emphasis added). The improper instruction that the jury would be delegated the decision to stop the read-back at any time was not discussed prior' to the court giving the instruction. The court then informed the jury of how - long it would take to prepare the transcript and how long the read-back would take and sent them back to deliberate while the transcript was prepared.
Once the transcript was prepared, the jury was brought back in for the read-back. Defense counsel asked to approach and requested that Detective Johnson’s testimony be read back in its entirety (including cross-examination) or not at all. The court replied:
Well, it’s up to the jury what they want to hear and what they don’t want to hear. There isn’t any rule of completeness. The jury had sought that they want to hear statements or testimony made by this detective, so I’m going to have the court reporter read this, and if they tell us to stop I’m going to stop. It’s the jury’s decision what they want to hear at this point; okay?
The trial court rejected defense counsel’s request and conducted the read-back. Once direct examination had mostly been read back, the foreperson and another juror stated that they had heard enough. The court informed the jury that there were portions of the cross-examination related to Detective Johnson’s interview but in the same statement improperly added: “Do you wish to hear all of the interview or do you wish to stop now?” Someone from -the jury -said, “Stop.” Rather than continuing, with the entire testimony, the trial court regrettably permitted the jury to dictate the manner and scope of the read-back. The jury returned to deliberations and found Gormady guilty.
“Trial courts are afforded broad discretion in matters concerning the read-back or play-back of testimony.” Mullins v. State, 78 So.3d 704, 705 (Fla. 4th DCA 2012). Under Florida Rule of Criminal Procedure 3.410, when the jury requests a read-back, the court may honor such a request in its discretion after notice to the State and defense. However, trial courts should liberally construe a jury’s request for a read-back of testimony. Hazuri v. State, 91 So.3d 836, 845 (Fla.2012). That is, any request for transcripts or testimony should prompt the trial court to inform the jury of the potential availability of a read-back; Id. at 846. Additionally, a trial court may not mislead a jury into believing that read-backs are prohibited. Id. The Florida Standard Jury Instructions provide language for granting a read-back as requested, deferring a request, or denying the request. Fla. Std. Jury Instr. (Crim.) 4.4.[3] Limited or partial read-backs are *551 permissible. Avila v. State, 781 So.2d 413, 415 (Fla. 4th DCA 2001). But a partial read-back is improper if it is misleading or places undue emphasis on particular statements. Garcia v. State, 644 So.2d 59, 62 (Fla.1994). In Mullins, the Fourth. District held that a partial read-back was misleading where cross-examination was within the scope of the jury’s request, the jury was not informed that the .read-back only included testimony elicited on direct and, “more importantly, the partial [readj-back served to emphasize a version of events favorable to the State and diminish[ed] a version favorable to the defense.” Mullins, 78 So.3d at 706.
We conclude that the trial court erred by permitting the jury to cease the read-back at any time, thereby allowing the jury to hear a partial read-back of Detective Johnson’s testimony that placed undue emphasis on and served to bolster the State’s version. of events. While the trial court has broad discretion in granting or. denying a request for a read-back, the trial court here deprived itself of the ability to exercise that discretion by allowing the jury to modify the scope of the read-back request while the read-back was ongoing. Cf. Rodriguez v. State, 559 So.2d 678, 679 (Fla. 3d DCA 1990) (noting that while a trial court has great discretion in ruling on a read-back request, the diseretion cannot be properly exercised without knowing the nature of the request), abrogated on other grounds by Scoggins v. State, 726 So.2d 762 (Fla.1999). The resulting partial read-back unduly emphasized the detective’s direct testimony and was harmful in this case. The primary evidence tying Gormady to the contraband was the testimony of Detective Johnson. His testimony, therefore, was crucial-to the State’s case, and the partial read-back of -his' statements on direct examination “served to emphasize a version of events favorable to the State and dimmish a version favorable to the defense.” Mullins, 78 So.3d at 706.
The dissent minimizes the value of the cross-examination to the jury in this case, arguing that there was not a competing version of event's and that the cross-examination did not relate to an essential element of the charged crime. However, the cross-examination of Detective Johnson was critical because "he was the State’s key witness and the prosecution’s case depended on his credibility." Cf. Perez v. State, 949 So.2d 363, 365 (Fla. 2d DCA 2007) (“[C]ross-examination is ‘especially necessary’ when the witness being cross-examined is the State’s key witness, upon whom the credibility of the State’s cáse depends”). Moreover, the fact that the por *552 tion of the testimony read back to the jury contained the prosecutor’s attempt to anti-cipatorily rehabilitate Detective Johnson does not diminish the importance of the cross-examination. This testimony was elicited to “take the wind out of the sails” or “soften the blow” of anticipated credibility attacks. See Lawhorne v. State, 500 So.2d 519, 520 (Fla.1986) (quoting Bell v. State, 491 So.2d 537, 538 (Fla.1986)). The testimony elicited on cross-examination was -to attack Detective Johnson’s credibility.
We recognize that this court has previously upheld the partial read-back of a key witness’s testimony. In State v. Anton, 700 So.2d 743 (Fla. 2d DCA 1997), the defendant was on trial for attempted robbery with a firearm. Id. at. 745. A single witness testified as to the defendant’s possession of the firearm. Id. at 746. During deliberations, the.jury requested a read-back of the witness’s testimony pertaining to the defendant’s possession of a firearm. Id. at 747. The court reviewed the witness’s testimony and found that there was no cross-examination relevant to the jury’s request.. Id. Defense counsel agreed that there was not any relevant cross-examination but objected to the read-back on the basis that it would place undue emphasis on the narrow portion of the testimony read back. Id. In upholding the read-back, we specifically noted that-aside from the read-back testimony there was no other relevant testimony concerning the defendant’s possession of the firearm and reasoned that the trial court did not place undue emphasis on a portion of the evidence. Id. at 748.
However, in this case the trial court declined to read back relevant testimony from cross-examination. Where there was no cross-examination relevant to the jury’s request in Anton, here defense counsel elicited testimony on cross-examination that was relevant to the jury’s request. Defense counsel impeached the detective on the inconsistencies between his reports and testimony and attacked the interviewing and reporting procedures employed by the detective. Although the court may have intended for this testimony to be read back to the jury, it thwarted this intention by allowing the jury to stop the play back at any time.
Although the court informed the jury of the availability of a read-back of the cross-examination of Detective Johnson and heeded the jury’s request to end the read-back, we do not find these precautions sufficient to dispel the risk that the jury may have overemphasized the testimony that was read back. We are persuaded by the reasoning in State v. Garcia, 156 Idaho 352, 326 P.3d 354, 355-58 (App.2014). In that case, during jury deliberations, the jury requested a read-back of a key witness’s direct testimony and the defense objected to the reading of only the direct testimony, insisting that cross-examination should also be read because it discredited the witness. Id. at 357. The trial court overruled the objection, stating that the jury had made a specific request and that the court’s obligation was to give them what they wanted. Id. The trial court ceased the read-back when it was halfway through when the jury informed, the court that it had heard what it needed. Id. at 357-58. The Idaho Court of Appeals held that the trial court erred in failing to hon- or the defense’s request that cross-examination be included in the read-back. Id. at 360. It reasoned that the trial court failed to recognize that it had discretion to require reading of more testimony than specifically requested by the jury and that reading only a portion of the direct testimony was prejudicial because without rereading the cross-examination the testimony favoring the State was overemphasized. Id. The Idaho Court of Appeals also recog *553 nized that the trial court attempted to honor the jury’s request but reasoned that “in some circumstances the court should consider the need to ensure that‘the testimony to be re-read is not given undue weight.” Id. at 358 n. 2, 326 P.3d 354. Similarly, in this case, it appears that the trial court failed to recognize that it — not the jury — had discretion over the scope of the read-back.
The dissent’s reliance on Cole v. State, 701 So.2d 845 (Fla.1997), is unavailing. The jury in that case clarified its read-back request before the read-back was conducted, whereas in this case there was no clarification of the request — the court improperly allowed the jury to alter the scope of the read-back extemporaneously.
The dissent goes on to characterize the difference between clarifying a read-back request prior to the read-back as contemplated by Florida Standard Criminal Jury Instruction 4.4 and allowing a jury to modify the scope of its request during the read-back as legally insignificant. We disagree. Partial read-backs have the potential to prejudice the defendant. See Mullins, 78 So.3d at 706; Garcia, 326 P.3d at 359-60. Therefore, when such a request is received fi-om the jury, before conducting a read-back, a trial court must ensure that the testimony to be read back is related and responsive to the jury’s request, is not misleading, and does not place undue emphasis on any particular statements. See Mullins, 78 So.3d at 705-06. Allowing a jury to spontaneously define the scope of a read-back deprives the trial court of the opportunity to conduct this analysis. Moreover, the manner in which the trial court conducted the read-back was insufficient to ensure that there was a consensus in the jury to cease the read-back. The: transcript indicates that two jurors stated that they did not wish to continue with the read-back. However, there is no indication in the transcript as to the wishes of the other jurors. We are concerned that one or more of the silent members of the jury may' have wished to continue the read-back but did not wish to voice their desire in court once the other jurors stated otherwise.[4]
The dissent points out that “where a request is clearly circumscribed, the trial court has no obligation to compel jurors to hear testimony they have not asked for or to continue a read[-]back after they have expressly indicated that they have heard enough.” State v. Wilson, 165 N.J. 657, 762 A.2d 647, 649 (N2000). However, in this case, the request was not clearly circumscribed. The jury requested a recording of the interview or “the reporter’s recording of the defendant’s presumed interview/confession per the detective.” The court denied the request for a recording but did not take the opportunity to clarify the read-back request with the jury. Indeed, the Wilson court also noted that a jury’s uncircumscribed request for a read-back of testimony should generally include cross-examination.
II. the Other Issues Raised by Gormady
Because this case must be retried, we address briefly the three other issues raised by Gormady. First, we agree with Gormady that the trial court improperly *554 restricted the defense counsel’s opening statement. See Gutierrez v. State, 133 So.3d 1125, 1131 (Fla. 5th DCA 2014) (noting that defense counsel’s opening statement that the jury would not hear from any eyewitnesses . was not an improper opening statement), quashed on other grounds by 177 So.3d 226 (Fla.2015); Young v. State, 791 So.2d 1121, 1123 (Fla. 4th DCA 2000) (“In the present case, there was nothing misleading about defense counsel telling the jury, in opening statement, that there would be no evidence that the defendant had cocaine in his physical possession when he was arrested.”). Nevertheless, defense counsel was able to make her points in closing argument, and we find no reversible error in connection with the trial court’s limitation of defense counsel’s opening statement. Second, we find no abuse of discretion with regará to the trial court’s ruling concerning the scope of the prosecutor’s cross-examination of Chelsea McDevitt, a crime scene technician, on. the effect that wrapping glass or metal objects in a T-shirt might have on the presence of fingerprints or DNA on such objects. Third, Gormady failed to preserve for appellate review the issue of the trial court’s off-the-cuff explanation to the venire of the concept of reasonable doubt.[5] However, we caution the trial court that such “extemporaneous explanation of sensitive legal issues that are already embraced within the standard jury instructions runs the risk of creating error.” State v. Wilson, 686 So.2d 669, 570 (Fla.1996).
III. Conclusion
To summarize, because the trial court erred in allowing the jury to hear a partial read-back of Detective Johnson’s testimony that unduly emphasized the State’s version of events, we reverse Gormady’s judgments and sentences and. remand for a new trial. We have considered the other points raised by Gormady and find no reversible' error.
Reversed and remanded for a new trial.
WALLACE-, J., Concurs.
CRENSHAW, J., Dissents with opinion.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Instruction 4.4 provides:

1. Read-Back/Play-Back granted as requested

Members of the jury, you have asked that the following testimony be [read] [played] back to you: (describe testimony).
The court reporter will now [read] [play back] the testimony that you have requested.
OR

2. Read-Back/Play-Back Deferred

Members of the jury, I have discussed with the attorneys your request to have certain testimony [read] [played] back to you. It will take approximately (amount of time) to have the court, reporter prepare and [read] [play] back the requested testimony.
*551 I now direct you to return to the jury room and discuss your request further. If you are not able to resolve your question about the requested testimony by relying on your collective memory, then you should write down as specific a description as possible of the part of the witness(es)’ testimony that you want to hear again. Make your request for [reading] [playing] back testimony as specific as possible.
OR

3. Read-Back/Play Back Denied

Members of the jury, you have asked that the following testimony be [read] [played] back to you: (describe testimony)
I am not able to grant your request.

4. ■ Request for transcripts

Members of the jury, you have asked that transcripts of testimony be provided for you. Transcripts are not available. However, you may request to have testimony '[read] [played] back to you. This request may be granted at the court’s discretion. I now direct you to return to the jury room and discuss your request further. If you are not able to resolve your question about the requested testimony by relying on your collective memory, then you may request to have testimony [read] [played] back to you. If you decide to make such a request, it should be as specific as possible.

. We recognizé that at this point the trial court informed the jurors that if they wanted to hear anything else or had any questions that they should "put it in writing signed by the foreperson.” This instruction does not alleviate our concerns because the judge allowed the read-back to be orally stopped by the foreperson and one other juror but would require a written request signed by the foreperson in order to conduct a read-back of additional testimony.

. Judge Peter A. Dubensky presided over jury selection. Judge Thomas W. Krug handled the trial of the case.