CRENSHAW, J.,
Dissenting.
Because I cannot conclude that the trial court abused its broad discretion in allowing the jury to hear a partial read-back of the detective’s testimony, I must respectfully dissent.
A trial court does not abuse its discretion by permitting a partial read-back of testimony that directly relates to the jury’s inquiry, is not misleading, and does not place undue emphasis on any particular statements. See Cole v. State, 701 So.2d 845, 850 (Fla.1997). In Cole, the supreme court found no reversible error in a partial read-back and affirmed Cole’s convictions and death sentence for an incident in which Cole murdered John Edwards and sexually battered his sister; Pam Edwards, while the Edwardses were camping. Id. at 848-50. During the penalty phase, the jury requested tb hear a specific portion of Pam Edwards’s testimony wherein she described certain events of the attack and the defense objected, insisting that the entire direct, crasa, and redirect of the witness be read. Id. at 850. The court overruled the objection and determined that the limited portion could be read. Id. “Before the testimony was read, the jury clarified its request, asking for Pam’s testimony beginning with John’s apology to *555 Pam. This portion of the testimony was then read to the jury.” Id. The supreme court found no abuse of discretion in this procedure, explaining that “[t]he portions reread to the jury were directly responsive to the jury’s request, and the limited rereading was not misleading and did not place undue emphasis on portions prejudicial to.. Cole.” Id.
Similarly, here, 'the trial court exercised its broad discretion to allow the jury to make its request for the read-back as specific as possible, instead of forcing the jury to listen to read-back material that was unresponsive to its request. The court did not “deprive[ ] itself of the ability to exercise [its] discretion,” as 'suggested by the majority; instead, the court allowed the jury to specify its request in order to ensure that the read-back was directly responsive to the request; as approved of in Cole.[6] The jury indicated that it wanted to hear “the reporter’s recording of-the defendant’s presumed interview/confession per the detective.” (Emphasis - added). The note mentioned nothing about cross-examination and did not indicate that the jury wanted to hear the detective’s testimony regarding other details of his investigation or report thereof. The record reflects that the direct and cross portions of the detective’s testimony totaled sixty-eight pages but that the jury insisted on stopping the read-back after hearing only thirty-four pages of testimony. This portion included most, but not all, of the direct and none of the cross. Importantly, the record reveals that the jury interrupted the read-back at the precise moment the reporter read the portion of the detective’s testimony wherein- the detective recited- Gormady’s incriminating statements during the interview. As soon as this testimony was read, at.least .two members of the jury announced that they were done with the read-back, prompting the following exchange between the court and the jury:
COURT: All right. In your question you had asked about an interview. I had made the comment that there, are many portions of this testimony both in direct, if-you recall the Defense -Attorney also got up in cross-examination and asked questions related to the interview as well. Do you wish to hear all of the interview or do you wish to stop now?
FROM THE JURY: Stop.
FOREPERSON: We’re finished. We’ve heard enough.
COURT: Okay. We will stop and make a note of where we’re stopping. Again, if you wish to hear anything else or you have any' questions, put it- in writing signed by the foreperson.
Clearly, any testimony regarding the interview contained in cross or even in the later portions of direct were outside the scope of the jury’s request, as the jury affirmatively and specifically indicated‘this to the court.
Though Cole is distinguishable in that the jury clarified what it wanted to hear before the testimony was read, and here the jury clarified its request immediately after the testimony was read, the distinction is legally insignificant. For example, in affirming a trial court’s decision to allow *556 a partial read-back, the Supreme Court' of New Jersey noted that “if the scope of the jury’s request is unclear or if something occurs during the readback to raise a question about the extent of the testimony sought, the obligation of the trial court is to ascertain the will of the jury.” State v. Wilson, 165 N.J. 657, 762 A.2d 647, 649 (2000). In Wilson, the jury did not initially limit its read-back request but during a break in the read-back
the foreperson of..the jury said something to the effect of ‘okay, fíne,’ 'and the jurors got up to leave. The trial court and the lawyers took that as a signal that the jurors had heard enough, although defense counsel continued to argue -that they should be ‘required’' to hear the whole statement.
Id. The Wilson court affirmed the trial court’s decision to deny defense counsel’s request and explained that when there is “any possible doubt regarding the meaning to be ascribed to the jurors’ words and actions ... it [is] preferable for the trial court to ... ask[ ] the jury directly whether it wishe[s] to hear the cross-examination of the witness.” Id. Indeed, the court clarified that “where a request is clearly circumscribed, the trial court has no obligation to compel jurors to hear testimony they have not asked for or to continue a "readback after they have expressly indicated that they have heard enough;” Id. (emphasis added). This is exactly the procedure utilized by the trial court in Gormady’s case.
The majority relies on Mullins v. State, 78 So.3d 704, 706 (Fla. 4th DCA 2012), to argue that the partial read-back was misleading and “served to emphasize a version of events favorable to the State and diminish a version favorable to the defense.” But Mullins is distinguishable. In Mullins, the jury requested to hear the testimony of two witnesses regarding their observations of the incident resulting in Mullins's charges. 78 So.3d at 705. However, unlike the instant case, the trial court allowed a partial read-back of only the direct examination portions of the two witnesses’ testimony and did not tell the jury about the relevant testimony from cross-examination. Id. at 706. As the Fourth District pointed out, “the failure to include the cross-examination was misleading in that testimony on cross-examination was within the scope of the jury’s request and yet -the jury was not told that the .play-back included only the testimony elicited on direct examination.” Id. In stark contrast, here the trial court informed the jury on. multiple occasions, both before and after the read-back, that. it would read back portions of the detective’s cross-examination if the jury so desired. However, the jury affirmatively informed the court, that it did not wish to hear those portions. Nothing about, this exchange between the court and the jury was misleading in any way.
Furthermore, the read-back did not place undue emphasis on á prejudicial portion of the testimony, nor did it “emphasize a version of events favorable to the State and diminish a version favorable to the defense.” See id. A discussion of the factual differences between this case and Mullins is particulai-ly illustrative of this point. The Fourth District provided the following recitation of the facts in Mullins:
The victim, Anthony Gehle, and his wife, Angela, were separated. On March 12, 2009, Gehle took the couple’s daughter to the home his wife shared with her boyfriend, the defendant. It was undisputed that the defendant punched Gehle and, thereafter, Gehle drove away from the homé with the defendant winding up on the hood of Gehle’s car. Gehle then ran the stop sign and was struck by an oncoming *557 vehicle. The State’s theory was that-the defendant had deliberately jumped onto the hood of Gehle’s car; that the defendant had hung onto the hood, attempting to punch Gehle through the open driver’s side window; and that, as a result, Gehle panicked, accelerated through the stop sign, and was struck by an oncoming vehicle. According to the defense theory, the defendant wound up on the hood of the car after Gehle. deliberately struck the defendant with the carl The defendant was simply trying to hold on and made no attempts to punch Gehle through the window. Gehle’s failure to stop at the stop sign was not the product of any fear or panic, but of his desire to harm the defendant.
Id. at 705. The jury note in Mullins indicated that,the jury wanted “‘to hear the testimony of Angela Gehle ... concerning James Mullins jumping on the hood of the car’ and the testimony of Gomez ‘concerning James Mullins .jumping/falling off the car.’ ” Id. Importantly, Angela Gehle testified on direct that the defendant jumped on the hood after, the car was in motion; however, she testified on cross that he jumped on the hood before the car took off. Id. at 706.
This point is significant as the State repeatedly argued to . the jury that, the defendant had jumped on the hood of the car while the car was in motion and that jumping on the hood of a moving car was conduct showing a reckless disregard for the safety of others, i.e., by jumping on the hood, the defendant not only panicked the driver, but blocked his view of the stop sign. This reckless disregard was an essential component of the charged offenses.
Id. (emphasis added). The Fourth District noted that Gomez’s testimony likewise differed between direct and cross, presenting a version of events more favorable to the defendant on cross as to an element of the offense. Id.
Unlike Mullins, here the jury did not hear -a version of events that differed between the detective’s i direct and cross because the detective’s testimony regarding Gormady’s statements made in the “interview/confession” was entirely consistent throughout direct and cross. No other witnesses presented a differing vérsion of events'. The read-back did not place undue emphasis'on a prejudicial portion of testimony because there in fact Were no statements from -the detective regarding the actual substance of Gormady’s “interview/confession” adduced on cross. In other words, the jury heard the entirety of the. “interview/confession,” exactly, as requested and exactly as they . confirmed when they interrupted the read-back. The only portions of cross even potentially relevant to Gormady’s statements focused on the detective’s failure to write Gormady’s statements in the probable cause affidavit, his inability to say for sure whether Gor-mady was .sitting or standing during the interview, his failure to use an electronic recording device during the interview, his inability to confirm whether any other officer heard Gormady’s statements, and this exchange between defense counsel and the detective:
[Counsel]: Now, the statement that you say that Mr, Gormady made, these are not his exact words; light?
[Detective]: The statements that are written, or the statements that I’m testifying — because you're going back and forth?
[Counsel]; The statements that you have in your detailed report, [t]he gun is mine—
[Detective]: In my detailed report I used quotation marks, again, to kind of indicate that thN individual is speaking. Could a word have been replaced, like *558 an “an” or an “a” or — but for the most part, that is his language.
There’s some matter-of-fact language in there that I know that he said, but again it might not be the exact, if there’s a different “a,” “an” or “the,” or if I misplaced something.
However, the detective’s clarification as to the language used in his written report was not inconsistent with any testimony regarding what Gormady actually said to the detective.
The majority reasons that the read-back was prejudicial because the omitted portions of cross “impeached the detective on the inconsistencies between his reports and testimony and attacked the interviewing and reporting procedures employed by the detective.”[7] In my view this imper-missibly expands the holding in Mullins to now require- the read-back of a witness’s cross-examination simply because the general credibility of a witness may have been called into question. As I read Mullins, the analysis of whether omitting a witness’s cross-examination in a read-back is harmful should concern whether the cross contained differing information as to “essential component[s] of the charged offenses.” Id. While the majority suggests that the jury should have been required to rehear all of the general credibility attacks on the detective because his testimony was crucial, the detective’s credibility itself was not an essential element of the crimes charged, unlike the conflicting testimony regarding the defendant’s “reckless disregard” in Mullins. Id. Indeed, there was no different version of events presented on cross-examination regarding Gormady’s statements — the substance of which the State did use to prove essential elements of the charges.
As none of these credibility attacks on cross had to do with Gormady’s actual statements made in his “interview/confession,” this case is controlled by State v. Anton, 700 So.2d 743 (Fla. 2d DCA 1997). In Anton, “[t]he jury requested, and the trial court isolated, [a witness’s] testimony relating to a discrete elément of one of the offenses.” 700 So.2d at 748. Defense counsel objected and argued that all of the witness’s testimony would need to be read back because the failure to do so would “plac[e] undue weight on a narrow portion of the evidence.” Id. at 747. This court held that the trial court did riot abuse its discretion in permitting the discrete read-back over defense counsel’s objection, noting that “there was no other witness testimony casting doubt on [the witness’s] observation.” Id. at 748. Here, the jury made a similarly discrete request to hear only the portion of testimony concerning Gormady’s actual statements. Because the general credibility attacks contained in cross-examination were outside the scope of the jury’s request, and the failure to include them was not misleading nor did it place undue emphasis on a prejudicial portion, the trial court did not abuse its discretion in allowing the partial read-back.
Accordingly, I would affirm Gormady’s convictions and sentences.

. While not applicable to Gormady, the Florida Supreme Court's recent amendments to Florida Rule of Criminal Procedure 3.410 support the trial court’s decision to allow the jury to "specify the particular testimony they wish to have read or played back.” See In re Amendments to Florida Rules of Criminal Procedure, - So.3d -, - (Fla.2015). Similarly, the standard jury instructions contemplate the scenario where, as here, a read-back of an entire witness’s testimony may. take a significant amount of time prompting the court to encourage the jury to ‘‘[m]ake [its] request for [reading] [playing] back testimony as specific as possible.” See Fla. Std. Jury Instr. (Crim.) 4.4.

. Notably, portions of the read-back given in this case did impeach the detective's credibility, as he admitted on. direct that he failed to memorialize some of his actual observations in his written report and that he failed to recall those same observations when he testified at a previous hearing in this case.