NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JOHN ALBERT GORMADY,               )
                                   )
            Appellant,             )
                                   )
v.                                 )       Case No. 2D14-1497
                                   )
STATE OF FLORIDA,                  )
                                   )
            Appellee.              )
_____)

Opinion filed January 20, 2016.

Appeal from the Circuit Court for Manatee
County; Thomas W. Krug and Peter A.
Dubensky, Judges.

Howard L. Dimmig, II, Public Defender, and
Steven L. Bolotin, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Donna S. Koch, Assistant
Attorney General, Tampa, for Appellee.


KHOUZAM, Judge.

          John Albert Gormady appeals his judgments and sentences for

possession of a firearm by a convicted felon, possession of a controlled substance, and

possession of drug paraphernalia.  Because the trial court erred by permitting the jury to

hear a partial read-back of a key witness's testimony which placed undue emphasis on

particular statements, we reverse and remand for a new trial. We find no merit in the other issues raised by Gormady.

Gormady was charged with possession of a firearm by a convicted felon, possession of a controlled substance, and possession of drug paraphernalia after a handgun, methamphetamine, and several pipes were found in a vehicle in which he was a passenger.[1] Following a trial, he was convicted of the charges and sentenced to a mandatory minimum term of three years in prison for possession of a firearm and possession of a controlled substance. The trial court sentenced him to time served for possession of paraphernalia.

## I.    The read-back of Detective Johnson's testimony

Gormady first argues that the trial court erred by allowing the jury to hear a misleading partial read-back of Detective Bradley Johnson's testimony. We agree. Detective Johnson, the State's primary witness, testified that he pulled over a white truck with an expired license tag. Gormady was riding in the front passenger seat. Detective Johnson decided to issue a citation to the driver for the expired plate and, based on the driver's anxious behavior, asked for permission to search the vehicle. The driver consented. On the passenger's side of the vehicle, Detective Johnson found a bundled up T-shirt. The detective maintained that he found a small handgun in the T-shirt, but the defense disputed whether the firearm was found wrapped inside the shirt

---

[1]The State also charged Gormady with carrying a concealed firearm, but the trial court granted him a judgment of acquittal at the close of the State's case because no ammunition was found in the vehicle. See Ashley v. State, 619 So. 2d 294, 296 (Fla. 1993) (holding that a firearm found in a vehicle is not "readily accessible for immediate use" for purposes of a carrying a concealed weapon charge where no ammunition is found in the vehicle (quoting § 790.001(15), Fla. Stat. (Supp. 1990))).

as the detective did not memorialize this fact in his either of his two police reports. Detective Johnson also found a silver pipe, a pack of cigarettes, and a small red bag bundled in the shirt. The cigarette pack contained a plastic baggie with a crystal-like substance. Three more pipes were found inside the small red bag. The baggie and pipes later tested positive for methamphetamine. Detective Johnson separated the driver and Gormady and placed them in handcuffs. Detective Johnson read Gormady his Miranda[2] rights, and Gormady incriminated himself.

After the State and defense presented their respective cases, the jury went into deliberations. At some point, the jury submitted the following request: "Can we have a copy of the defendant's interview with the detective?—or the reporter's recording of the defendant's presumed interview/confession per the detective." The court discussed the matter with the attorneys:

> THE COURT: The answer to the first question is no. All the evidence has been presented that they can look at.
> The second one says the reporter's, they might be referring to our court reporter, and they're asking for the detective's testimony regarding what the defendant said.
> My thought is that there were several, both on direct and cross—maybe more than several times the detective stated what the defendant said.

The court then asked the court reporter how long it would take to prepare the transcript of Detective Johnson's testimony. The court reporter stated that it would take thirty to forty-five minutes to prepare the transcript and forty minutes to read the transcript. When the trial court asked if there was any objection to informing the jury of how long the transcript preparation would take, the following discussion between defense counsel and the trial court transpired:

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

[DEFENSE COUNSEL]: I just don't know what part of it is considered the defendant's presumed interview. I think in cross I jumped around back and forth on what he said my client's admission is. So are we going to chop up my cross when the Court Reporter confronts or runs into something that's related to the statements?

THE COURT: No. My intention was to have her read back the entire testimony of this witness.

[DEFENSE COUNSEL]: Full direct, full cross?

THE COURT: Yes.

. . . .

The COURT: Here's what I'm going to do. I'm going to let the jurors know what exactly time-wise it will take, which is a half hour for the court reporter to be able to prepare to do that, and then they would bring them back into the court room to read that testimony in its entirety, which would take—which will be about an hour-and-a-half is our recollection of that.

So I'll send them back after that into the jury room to continue deliberating, while we're setting that up. And they can decide if that's what they still intend to do; okay?

However, when the trial court brought the jury back in, it instead instructed them as follows:

[T]here were several times throughout [Detective Johnson's] testimony this morning where the defendant's statements were discussed, both on direct and cross and I believe on redirect. . . . [Y]ou could hear it again, the entire testimony of this witness, <u>unless at some point you want to stop and it's been completed.</u>

But again, in talking to the attorneys it appears that your questions, both in direct and cross this discussion was going on, so there's not just one spot that we can go to.

(Emphasis added). The improper instruction that the jury would be delegated the decision to stop the read-back at any time was not discussed prior to the court giving the instruction. The court then informed the jury of how long it would take to prepare the transcript and how long the read-back would take and sent them back to deliberate while the transcript was prepared.

Once the transcript was prepared, the jury was brought back in for the read-back. Defense counsel asked to approach and requested that Detective Johnson's testimony be read back in its entirety (including cross-examination) or not at all. The court replied:

> Well, it's up to the jury what they want to hear and what they don't want to hear. There isn't any rule of completeness. The jury had sought that they want to hear statements or testimony made by this detective, so I'm going to have the court reporter read this, and if they tell us to stop I'm going to stop. It's the jury's decision what they want to hear at this point; okay?

The trial court rejected defense counsel's request and conducted the read-back. Once direct examination had mostly been read back, the foreperson and another juror stated that they had heard enough. The court informed the jury that there were portions of the cross-examination related to Detective Johnson's interview but in the same statement improperly added: "Do you wish to hear all of the interview or do you wish to stop now?" Someone from the jury said, "Stop." Rather than continuing with the entire testimony, the trial court regrettably permitted the jury to dictate the manner and scope of the read-back. The jury returned to deliberations and found Gormady guilty.

"Trial courts are afforded broad discretion in matters concerning the read-back or play-back of testimony." Mullins v. State, 78 So. 3d 704, 705 (Fla. 4th DCA 2012). Under Florida Rule of Criminal Procedure 3.410, when the jury requests a read-back, the court may honor such a request in its discretion after notice to the State and defense. However, trial courts should liberally construe a jury's request for a read-back of testimony. Hazuri v. State, 91 So. 3d 836, 845 (Fla. 2012). That is, any request for transcripts or testimony should prompt the trial court to inform the jury of the potential availability of a read-back. Id. at 846. Additionally, a trial court may not mislead a jury

into believing that read-backs are prohibited.  Id.  The Florida Standard Jury Instructions

provide language for granting a read-back as requested, deferring a request, or denying

the request.  Fla. Std. Jury Instr. (Crim.) 4.4.[3]  Limited or partial read-backs are

---

[3]Instruction 4.4 provides:

*1.      Read-Back/Play-Back granted as requested*

**Members of the jury, you have asked that the following testimony be [read] [played] back to you: (describe testimony).**

**The court reporter will now [read] [play back] the testimony that you have requested.**

OR

*2.      Read-Back/Play-Back Deferred*

**Members of the jury, I have discussed with the attorneys your request to have certain testimony [read] [played] back to you.  It will take approximately** (amount of time) **to have the court reporter prepare and [read] [play] back the requested testimony.**

**I now direct you to return to the jury room and discuss your request further.  If you are not able to resolve your question about the requested testimony by relying on your collective memory, then you should write down as specific a description as possible of the part of the witness(es)' testimony that you want to hear again.  Make your request for [reading] [playing] back testimony as specific as possible.**

OR

*3.      Read-Back/Play Back Denied*

**Members of the jury, you have asked that the following testimony be [read] [played] back to you:** (describe testimony)

**I am not able to grant your request.**

*4.      Request for transcripts*

**Members of the jury, you have asked that transcripts of testimony be provided for you. Transcripts are not available.  However, you may request to have testimony [read] [played] back to you. This request may be granted at the court's discretion.  I now direct you to return to the jury room and discuss your request further.  If you are not able to resolve your question about the requested testimony by relying on your collective memory, then you may request to have testimony [read] [played] back to you.  If you decide to**

- 6 -

permissible. Avila v. State, 781 So. 2d 413, 415 (Fla. 4th DCA 2001). But a partial read-back is improper if it is misleading or places undue emphasis on particular statements. Garcia v. State, 644 So. 2d 59, 62 (Fla. 1994). In Mullins, the Fourth District held that a partial read-back was misleading where cross-examination was within the scope of the jury's request, the jury was not informed that the read-back only included testimony elicited on direct and, "more importantly, the partial [read]-back served to emphasize a version of events favorable to the State and diminish[ed] a version favorable to the defense." Mullins, 78 So. 3d at 706.

We conclude that the trial court erred by permitting the jury to cease the read-back at any time, thereby allowing the jury to hear a partial read-back of Detective Johnson's testimony that placed undue emphasis on and served to bolster the State's version of events. While the trial court has broad discretion in granting or denying a request for a read-back, the trial court here deprived itself of the ability to exercise that discretion by allowing the jury to modify the scope of the read-back request while the read-back was ongoing. Cf. Rodriguez v. State, 559 So. 2d 678, 679 (Fla. 3d DCA 1990) (noting that while a trial court has great discretion in ruling on a read-back request, the discretion cannot be properly exercised without knowing the nature of the request), abrogated on other grounds by Scoggins v. State, 726 So. 2d 762 (Fla. 1999). The resulting partial read-back unduly emphasized the detective's direct testimony and was harmful in this case. The primary evidence tying Gormady to the contraband was the testimony of Detective Johnson. His testimony, therefore, was crucial to the State's

**make such a request, it should be as specific as possible.**

case, and the partial read-back of his statements on direct examination "served to emphasize a version of events favorable to the State and diminish a version favorable to the defense." Mullins, 78 So. 3d at 706.

The dissent minimizes the value of the cross-examination to the jury in this case, arguing that there was not a competing version of events and that the cross-examination did not relate to an essential element of the charged crime. However, the cross-examination of Detective Johnson was critical because he was the State's key witness and the prosecution's case depended on his credibility. Cf. Perez v. State, 949 So. 2d 363, 365 (Fla. 2d DCA 2007) ("[C]ross-examination is 'especially necessary' when the witness being cross-examined is the State's key witness, upon whom the credibility of the State's case depends"). Moreover, the fact that the portion of the testimony read back to the jury contained the prosecutor's attempt to anticipatorily rehabilitate Detective Johnson does not diminish the importance of the cross-examination. This testimony was elicited to "take the wind out of the sails" or "soften the blow" of anticipated credibility attacks. See Lawhorne v. State, 500 So. 2d 519, 520 (Fla. 1986) (quoting Bell v. State, 491 So. 2d 537, 538 (Fla. 1986)). The testimony elicited on cross-examination was to attack Detective Johnson's credibility.

We recognize that this court has previously upheld the partial read-back of a key witness's testimony. In State v. Anton, 700 So. 2d 743 (Fla. 2d DCA 1997), the defendant was on trial for attempted robbery with a firearm. Id. at 745. A single witness testified as to the defendant's possession of the firearm. Id. at 746. During deliberations, the jury requested a read-back of the witness's testimony pertaining to the defendant's possession of a firearm. Id. at 747. The court reviewed the witness's

testimony and found that there was no cross-examination relevant to the jury's request. Id. Defense counsel agreed that there was not any relevant cross-examination but objected to the read-back on the basis that it would place undue emphasis on the narrow portion of the testimony read back. Id. In upholding the read-back, we specifically noted that aside from the read-back testimony there was no other relevant testimony concerning the defendant's possession of the firearm and reasoned that the trial court did not place undue emphasis on a portion of the evidence. Id. at 748.

However, in this case the trial court declined to read back relevant testimony from cross-examination. Where there was no cross-examination relevant to the jury's request in Anton, here defense counsel elicited testimony on cross-examination that was relevant to the jury's request. Defense counsel impeached the detective on the inconsistencies between his reports and testimony and attacked the interviewing and reporting procedures employed by the detective. Although the court may have intended for this testimony to be read back to the jury, it thwarted this intention by allowing the jury to stop the play back at any time.

Although the court informed the jury of the availability of a read-back of the cross-examination of Detective Johnson and heeded the jury's request to end the read-back, we do not find these precautions sufficient to dispel the risk that the jury may have overemphasized the testimony that was read back. We are persuaded by the reasoning in State v. Garcia, 326 P.3d 354, 355-58 (Idaho Ct. App. 2014). In that case, during jury deliberations, the jury requested a read-back of a key witness's direct testimony and the defense objected to the reading of only the direct testimony, insisting that cross-examination should also be read because it discredited the witness. Id. at 357. The

trial court overruled the objection, stating that the jury had made a specific request and that the court's obligation was to give them what they wanted. Id. The trial court ceased the read-back when it was halfway through when the jury informed the court that it had heard what it needed. Id. at 357-58. The Idaho Court of Appeals held that the trial court erred in failing to honor the defense's request that cross-examination be included in the read-back. Id. at 360. It reasoned that the trial court failed to recognize that it had discretion to require reading of more testimony than specifically requested by the jury and that reading only a portion of the direct testimony was prejudicial because without rereading the cross-examination the testimony favoring the State was overemphasized. Id. The Idaho Court of Appeals also recognized that the trial court attempted to honor the jury's request but reasoned that "in some circumstances the court should consider the need to ensure that the testimony to be re-read is not given undue weight." Id. at 358 n.2. Similarly, in this case, it appears that the trial court failed to recognize that it—not the jury—had discretion over the scope of the read-back.

The dissent's reliance on Cole v. State, 701 So. 2d 845 (Fla. 1997), is unavailing. The jury in that case clarified its read-back request before the read-back was conducted, whereas in this case there was no clarification of the request—the court improperly allowed the jury to alter the scope of the read-back extemporaneously.

The dissent goes on to characterize the difference between clarifying a read-back request prior to the read-back as contemplated by Florida Standard Criminal Jury Instruction 4.4 and allowing a jury to modify the scope of its request during the read-back as legally insignificant. We disagree. Partial read-backs have the potential to prejudice the defendant. See Mullins, 78 So. 3d at 706; Garcia, 326 P. 3d at 359-60.

- 10 -

Therefore, when such a request is received from the jury, before conducting a read-back, a trial court must ensure that the testimony to be read back is related and responsive to the jury's request, is not misleading, and does not place undue emphasis on any particular statements. See Mullins, 78 So. 3d at 705-06. Allowing a jury to spontaneously define the scope of a read-back deprives the trial court of the opportunity to conduct this analysis. Moreover, the manner in which the trial court conducted the read-back was insufficient to ensure that there was a consensus in the jury to cease the read-back. The transcript indicates that two jurors stated that they did not wish to continue with the read-back. However, there is no indication in the transcript as to the wishes of the other jurors. We are concerned that one or more of the silent members of the jury may have wished to continue the read-back but did not wish to voice their desire in court once the other jurors stated otherwise.[4]

The dissent points out that "where a request is clearly circumscribed, the trial court has no obligation to compel jurors to hear testimony they have not asked for or to continue a read[-]back after they have expressly indicated that they have heard enough." State v. Wilson, 762 A.2d 647, 649 (N.J. 2000). However, in this case, the request was not clearly circumscribed. The jury requested a recording of the interview or "the reporter's recording of the defendant's presumed interview/confession per the detective." The court denied the request for a recording but did not take the opportunity

---

[4]We recognize that at this point the trial court informed the jurors that if they wanted to hear anything else or had any questions that they should "put it in writing signed by the foreperson." This instruction does not alleviate our concerns because the judge allowed the read-back to be orally stopped by the foreperson and one other juror but would require a written request signed by the foreperson in order to conduct a read-back of additional testimony.

to clarify the read-back request with the jury.  Indeed, the <u>Wilson</u> court also noted that a jury's uncircumscribed request for a read-back of testimony should generally include cross-examination.

## II.    The Other Issues Raised by Gormady

Because this case must be retried, we address briefly the three other issues raised by Gormady.  First, we agree with Gormady that the trial court improperly restricted the defense counsel's opening statement.  <u>See</u> <u>Gutierrez v. State</u>, 133 So. 3d 1125, 1131 (Fla. 5th DCA 2014) (noting that defense counsel's opening statement that the jury would not hear from any eyewitnesses was not an improper opening statement), <u>quashed on other grounds by</u> 177 So. 3d 226 (Fla. 2015); <u>Young v. State</u>, 791 So. 2d 1121, 1123 (Fla. 4th DCA 2000) ("In the present case, there was nothing misleading about defense counsel telling the jury, in opening statement, that there would be no evidence that the defendant had cocaine in his physical possession when he was arrested.").  Nevertheless, defense counsel was able to make her points in closing argument, and we find no reversible error in connection with the trial court's limitation of defense counsel's opening statement.  Second, we find no abuse of discretion with regard to the trial court's ruling concerning the scope of the prosecutor's cross-examination of Chelsea McDevitt, a crime scene technician, on the effect that wrapping glass or metal objects in a T-shirt might have on the presence of fingerprints or DNA on such objects.  Third, Gormady failed to preserve for appellate review the issue of the trial court's off-the-cuff explanation to the venire of the concept of

reasonable doubt.[5]  However, we caution the trial court that such "extemporaneous explanation of sensitive legal issues that are already embraced within the standard jury instructions runs the risk of creating error."  State v. Wilson, 686 So. 2d 569, 570 (Fla. 1996).

### III.    Conclusion

To summarize, because the trial court erred in allowing the jury to hear a partial read-back of Detective Johnson's testimony that unduly emphasized the State's version of events, we reverse Gormady's judgments and sentences and remand for a new trial.  We have considered the other points raised by Gormady and find no reversible error.

Reversed and remanded for a new trial.


WALLACE, J., Concurs.
CRENSHAW, J., Dissents with opinion.


CRENSHAW, J., Dissenting.

Because I cannot conclude that the trial court abused its broad discretion in allowing the jury to hear a partial read-back of the detective's testimony, I must respectfully dissent.

A trial court does not abuse its discretion by permitting a partial read-back of testimony that directly relates to the jury's inquiry, is not misleading, and does not place undue emphasis on any particular statements.  See Cole v. State, 701 So. 2d

---

[5]Judge Peter A. Dubensky presided over jury selection.  Judge Thomas W. Krug handled the trial of the case.

845, 850 (Fla. 1997). In Cole, the supreme court found no reversible error in a partial read-back and affirmed Cole's convictions and death sentence for an incident in which Cole murdered John Edwards and sexually battered his sister, Pam Edwards, while the Edwardses were camping. Id. at 848-50. During the penalty phase, the jury requested to hear a specific portion of Pam Edwards's testimony wherein she described certain events of the attack and the defense objected, insisting that the entire direct, cross, and redirect of the witness be read. Id. at 850. The court overruled the objection and determined that the limited portion could be read. Id. "Before the testimony was read, the jury clarified its request, asking for Pam's testimony beginning with John's apology to Pam. This portion of the testimony was then read to the jury." Id. The supreme court found no abuse of discretion in this procedure, explaining that "[t]he portions reread to the jury were directly responsive to the jury's request, and the limited rereading was not misleading and did not place undue emphasis on portions prejudicial to Cole." Id.

Similarly, here, the trial court exercised its broad discretion to allow the jury to make its request for the read-back as specific as possible, instead of forcing the jury to listen to read-back material that was unresponsive to its request. The court did not "deprive[] itself of the ability to exercise [its] discretion," as suggested by the majority; instead, the court allowed the jury to specify its request in order to ensure that the read-back was directly responsive to the request, as approved of in Cole.[6] The jury

<hr />

[6]While not applicable to Gormady, the Florida Supreme Court's recent amendments to Florida Rule of Criminal Procedure 3.410 support the trial court's decision to allow the jury to "specify the particular testimony they wish to have read or played back." See In re Amendments to Florida Rules of Criminal Procedure, 177 So. 3d 567, 576 (Fla. 2015). Similarly, the standard jury instructions contemplate the

indicated that it wanted to hear "the reporter's recording of the defendant's presumed interview/confession per the detective." (Emphasis added). The note mentioned nothing about cross-examination and did not indicate that the jury wanted to hear the detective's testimony regarding other details of his investigation or report thereof. The record reflects that the direct and cross portions of the detective's testimony totaled sixty-eight pages but that the jury insisted on stopping the read-back after hearing only thirty-four pages of testimony. This portion included most, but not all, of the direct and none of the cross. Importantly, the record reveals that the jury interrupted the read-back at the precise moment the reporter read the portion of the detective's testimony wherein the detective recited Gormady's incriminating statements during the interview. As soon as this testimony was read, at least two members of the jury announced that they were done with the read-back, prompting the following exchange between the court and the jury:

> COURT: All right. In your question you had asked about an interview. I had made the comment that there are many portions of this testimony both in direct, if you recall the Defense Attorney also got up in cross-examination and asked questions related to the interview as well. Do you wish to hear all of the interview or do you wish to stop now?
> FROM THE JURY: Stop.
> FOREPERSON: We're finished. We've heard enough.
> COURT: Okay. We will stop and make a note of where we're stopping. Again, if you wish to hear anything else or you have any questions, put it in writing signed by the foreperson.

---

scenario where, as here, a read-back of an entire witness's testimony may take a significant amount of time prompting the court to encourage the jury to "[m]ake [its] request for [reading] [playing] back testimony as specific as possible." See Fla. Std. Jury Instr. (Crim.) 4.4.

Clearly, any testimony regarding the interview contained in cross or even in the later portions of direct were outside the scope of the jury's request, as the jury affirmatively and specifically indicated this to the court.

Though Cole is distinguishable in that the jury clarified what it wanted to hear before the testimony was read, and here the jury clarified its request immediately after the testimony was read, the distinction is legally insignificant. For example, in affirming a trial court's decision to allow a partial read-back, the Supreme Court of New Jersey noted that "if the scope of the jury's request is unclear or if something occurs during the readback to raise a question about the extent of the testimony sought, the obligation of the trial court is to ascertain the will of the jury." State v. Wilson, 762 A.2d 647, 649 (N.J. 2000). In Wilson, the jury did not initially limit its read-back request but during a break in the read-back

> the foreperson of the jury said something to the effect of
> 'okay, fine,' and the jurors got up to leave. The trial court
> and the lawyers took that as a signal that the jurors had
> heard enough, although defense counsel continued to argue
> that they should be 'required' to hear the whole statement.

Id. The Wilson court affirmed the trial court's decision to deny defense counsel's request and explained that when there is "any possible doubt regarding the meaning to be ascribed to the jurors' words and actions . . . it [is] preferable for the trial court to . . . ask[] the jury directly whether it wishe[s] to hear the cross-examination of the witness." Id. Indeed, the court clarified that "where a request is clearly circumscribed, the trial court has no obligation to compel jurors to hear testimony they have not asked for or to continue a readback after they have expressly indicated that they have heard enough." Id. (emphasis added). This is exactly the procedure utilized by the trial court in Gormady's case.

The majority relies on Mullins v. State, 78 So. 3d 704, 706 (Fla. 4th DCA 2012), to argue that the partial read-back was misleading and "served to emphasize a version of events favorable to the State and diminish a version favorable to the defense." But Mullins is distinguishable. In Mullins, the jury requested to hear the testimony of two witnesses regarding their observations of the incident resulting in Mullins's charges. 78 So. 3d at 705. However, unlike the instant case, the trial court allowed a partial read-back of only the direct examination portions of the two witnesses' testimony and did not tell the jury about the relevant testimony from cross-examination. Id. at 706. As the Fourth District pointed out, "the failure to include the cross-examination was misleading in that testimony on cross-examination was within the scope of the jury's request and yet the jury was not told that the play-back included only the testimony elicited on direct examination." Id. In stark contrast, here the trial court informed the jury on multiple occasions, both before and after the read-back, that it would read back portions of the detective's cross-examination if the jury so desired. However, the jury affirmatively informed the court that it did not wish to hear those portions. Nothing about this exchange between the court and the jury was misleading in any way.

Furthermore, the read-back did not place undue emphasis on a prejudicial portion of the testimony, nor did it "emphasize a version of events favorable to the State and diminish a version favorable to the defense." See id. A discussion of the factual differences between this case and Mullins is particularly illustrative of this point. The Fourth District provided the following recitation of the facts in Mullins:

> The victim, Anthony Gehle, and his wife, Angela, were
> separated. On March 12, 2009, Gehle took the couple's

- 17 -

daughter to the home his wife shared with her boyfriend, the defendant. It was undisputed that the defendant punched Gehle and, thereafter, Gehle drove away from the home with the defendant winding up on the hood of Gehle's car. Gehle then ran the stop sign and was struck by an oncoming vehicle. The State's theory was that the defendant had deliberately jumped onto the hood of Gehle's car; that the defendant had hung onto the hood, attempting to punch Gehle through the open driver's side window; and that, as a result, Gehle panicked, accelerated through the stop sign, and was struck by an oncoming vehicle. According to the defense theory, the defendant wound up on the hood of the car after Gehle deliberately struck the defendant with the car. The defendant was simply trying to hold on and made no attempts to punch Gehle through the window. Gehle's failure to stop at the stop sign was not the product of any fear or panic, but of his desire to harm the defendant.

Id. at 705. The jury note in Mullins indicated that the jury wanted " 'to hear the testimony of Angela Gehle . . . concerning James Mullins jumping on the hood of the car' and the testimony of Gomez 'concerning James Mullins jumping/falling off the car.' "

Id. Importantly, Angela Gehle testified on direct that the defendant jumped on the hood after the car was in motion; however, she testified on cross that he jumped on the hood before the car took off. Id. at 706.

> This point is significant as the State repeatedly argued to the jury that the defendant had jumped on the hood of the car while the car was in motion and that jumping on the hood of a moving car was conduct showing a reckless disregard for the safety of others, i.e., by jumping on the hood, the defendant not only panicked the driver, but blocked his view of the stop sign. This reckless disregard was an essential component of the charged offenses.

Id. (emphasis added). The Fourth District noted that Gomez's testimony likewise differed between direct and cross, presenting a version of events more favorable to the defendant on cross as to an element of the offense. Id.

Unlike <u>Mullins</u>, here the jury did not hear a version of events that differed between the detective's direct and cross because the detective's testimony regarding Gormady's statements made in the "interview/confession" was entirely consistent throughout direct and cross. No other witnesses presented a differing version of events. The read-back did not place undue emphasis on a prejudicial portion of testimony because there in fact were no statements from the detective regarding the actual substance of Gormady's "interview/confession" adduced on cross. In other words, the jury heard the entirety of the "interview/confession," exactly as requested and exactly as they confirmed when they interrupted the read-back. The only portions of cross even potentially relevant to Gormady's statements focused on the detective's failure to write Gormady's statements in the probable cause affidavit, his inability to say for sure whether Gormady was sitting or standing during the interview, his failure to use an electronic recording device during the interview, his inability to confirm whether any other officer heard Gormady's statements, and this exchange between defense counsel and the detective:

> [Counsel]: Now, the statement that you say that Mr. Gormady made, these are not his exact words; right?
> [Detective]: The statements that are written, or the statements that I'm testifying—because you're going back and forth?
> [Counsel]: The statements that you have in your detailed report, [t]he gun is mine—
> [Detective]: In my detailed report I used quotation marks, again, to kind of indicate that this individual is speaking. Could a word have been replaced, like an "an" or an "a" or—but for the most part, that is his language.
> There's some matter-of-fact language in there that I know that he said, but again it might not be the exact, if there's a different "a," "an" or "the," or if I misplaced something.

- 19 -

However, the detective's clarification as to the language used in his written report was not inconsistent with any testimony regarding what Gormady actually said to the detective.

The majority reasons that the read-back was prejudicial because the omitted portions of cross "impeached the detective on the inconsistencies between his reports and testimony and attacked the interviewing and reporting procedures employed by the detective."[7] In my view this impermissibly expands the holding in Mullins to now require the read-back of a witness's cross-examination simply because the general credibility of a witness may have been called into question. As I read Mullins, the analysis of whether omitting a witness's cross-examination in a read-back is harmful should concern whether the cross contained differing information as to "essential component[s] of the charged offenses." Id. While the majority suggests that the jury should have been required to rehear all of the general credibility attacks on the detective because his testimony was crucial, the detective's credibility itself was not an essential element of the crimes charged, unlike the conflicting testimony regarding the defendant's "reckless disregard" in Mullins. Id. Indeed, there was no different version of events presented on cross-examination regarding Gormady's statements—the substance of which the State did use to prove essential elements of the charges.

As none of these credibility attacks on cross had to do with Gormady's actual statements made in his "interview/confession," this case is controlled by State v.

---

[7]Notably, portions of the read-back given in this case did impeach the detective's credibility, as he admitted on direct that he failed to memorialize some of his actual observations in his written report and that he failed to recall those same observations when he testified at a previous hearing in this case.

Anton, 700 So. 2d 743 (Fla. 2d DCA 1997). In Anton, "[t]he jury requested, and the trial court isolated, [a witness's] testimony relating to a discrete element of one of the offenses." 700 So. 2d at 748. Defense counsel objected and argued that all of the witness's testimony would need to be read back because the failure to do so would "plac[e] undue weight on a narrow portion of the evidence." Id. at 747. This court held that the trial court did not abuse its discretion in permitting the discrete read-back over defense counsel's objection, noting that "there was no other witness testimony casting doubt on [the witness's] observation." Id. at 748. Here, the jury made a similarly discrete request to hear only the portion of testimony concerning Gormady's actual statements. Because the general credibility attacks contained in cross-examination were outside the scope of the jury's request, and the failure to include them was not misleading nor did it place undue emphasis on a prejudicial portion, the trial court did not abuse its discretion in allowing the partial read-back.

Accordingly, I would affirm Gormady's convictions and sentences.