**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2068-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAHEEM A. CURRIE,

     Defendant-Appellant.

_____

> Argued September 18, 2018 – Decided May 6, 2019
>
> Before Judges Hoffman, Suter and Geiger.
>
> On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 14-09-1114.
>
> John S. Furlong argued the cause for appellant (Furlong and Krasny, attorneys; Andrew Mark Ferencevych, on the brief).
>
> Christopher Malikschmitt, Assistant Prosecutor, argued the cause for respondent (Angelo J. Onofri, Mercer County Prosecutor, attorney; Christopher Malikschmitt, on the brief).

PER CURIAM

Defendant Raheem Currie was driving with his girlfriend Endia Carver and friend Brandon Hill when they saw and encountered James Austin. According to Hill, Austin had robbed defendant just a few days earlier. Defendant and Austin argued and then "tussled" until Carter told Hill to break it up, which he did. Defendant smashed the rear window of Austin's car parked nearby; Austin responded by smashing the windshield of a car that belonged to defendant's aunt. As they drove off, defendant called his cousin, Robert Bartley, told him about the car damage and asked Bartley if he had his gun. Bartley said to "come talk to [him]" and they met Bartley a few minutes later.

Carver and Hill denied overhearing about a gun. They picked up Bartley, heading back to where they saw Austin. In responding to defendant's question whether he had the gun, Bartley testified he pulled it out, and showed it to defendant, stating he "had it, [his] gun, so it's whatever," meaning "whatever [defendant] wanted to do, [he] was with it." Carter and Hill claimed not to see the gun, but Carter testified she heard Bartley say he was going to "spray the place up."

They were back in minutes; Bartley got out and went up to a house; the door was slightly open. Austin came to the door. Bartley testified he "asked [Austin] what's up with him and my peoples" meaning "what was going on with

2

him and my cousin." Austin said "fuck your peoples," and according to Bartley, "[Austin] came closer to the door and I pulled out [the gun] and shot." Bartley shot Austin once in the chest. Laportia Guy, the mother of Austin's infant twins, said Austin tried to close the door but Bartley put his foot in the door and she heard a gunshot. Bartley returned to the vehicle and they left. Hill testified that Bartley told them "nobody better not tell shit." Bartley hid the gun at a friend's house. A neighbor near the shooting recognized Hill, leading to Bartley and defendant's arrest.

Bartley pleaded guilty to first-degree aggravated manslaughter, agreed to cooperate. Defendant was indicted for first-degree conspiracy (count one), N.J.S.A. 2C:5-2; first-degree murder (count two), N.J.S.A. 2C:11-3(a)(1)(2); second-degree possession of a weapon for an unlawful purpose (count three), N.J.S.A. 2C:39-4(a); and second-degree unlawful possession of a weapon (count four), N.J.S.A. 2C:39-5(b).

A jury convicted defendant of the lesser-included offense of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1); second-degree conspiracy to possess a weapon unlawfully, N.J.S.A. 2C:5-2(a)(2) and N.J.S.A. 2C:39-

5(b)(1); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b).[1]

Defendant was sentenced to a twenty-three year term for aggravated manslaughter, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court merged the second-degree conspiracy conviction with the second-degree unlawful possession of a weapon conviction, and sentenced defendant to a concurrent seven-year term, subject to a three-year period of parole ineligibility. He will be subject to parole supervision for five years after his release.

Defendant appeals his convictions and sentence. We affirm.

I

Defendant contends the trial court should have acquitted him of the murder charge (count two) because the State did not prove all its elements. At the close of the State's case, defendant asked for a judgment of acquittal on all charges. Count one charged conspiracy with multiple objectives that included conspiracy to commit murder; to commit possession of a weapon with an unlawful purpose and to possess a weapon unlawfully. Defendant argued, and

---

[1] The trial court dismissed the charge of conspiracy to commit murder under count one after the close of the State's case. The jury acquitted defendant of the other charges.

A-2068-16T2

the State conceded, there was no evidence to support a conspiracy between Bartley and defendant with the purpose to murder Austin. The court entered a judgment of acquittal on that portion of count one: conspiracy to commit murder. The court denied the motion regarding the other two theories of conspiracy. Defendant made "the same argument" regarding count two (that charged murder), but conceded the facts "may describe an aggravated manslaughter, it may describe a reckless manslaughter. It may describe someone reacting in self-defense. Whatever it is, murder is not it."

The court denied defendant's application because count two, the murder charge, was to "prove beyond a reasonable doubt that the victim's death was caused by Mr. Bartley and that . . . defendant is vicariously responsible for it because of a conspiracy that they engaged in." Relying on State v. Bridges, 133 N.J. 447 (1993), and giving the State the benefit of all favorable inferences, the court found there was sufficient evidence in the record to support co-conspirator liability against defendant, and denied defendant's request to acquit on count two. The court stated that "a conspirator can be held liable for the acts of others that constitute a reasonably foreseeable risk arising out of the criminal conduct undertak[en] to effectuate the agreement and occurring as necessary and natural consequences of the conspiracy."

A-2068-16T2

Defendant moved to set aside the jury verdict, arguing that defendant no longer could be responsible for Austin's death under a Bridges type analysis because defendant was acquitted of conspiracy to possess the weapon for an unlawful purpose and of possession for an unlawful purpose, leaving only convictions for unlawful possession and conspiracy to unlawfully possess. Defendant contended that these no longer supported liability under Bridges.

The court denied the motion, finding that Bridges still applied because there was sufficient evidence for the jury to find that defendant "set in motion a sequence of events that he should be held responsible for because it was reasonably foreseeable." The court stated that N.J.S.A. 2C:2-6(b)(4) was "all about holding the defendant accountable for the results of his conduct, of his actions and not about anything that he planned or had a purpose to do."

A person may be held "legally accountable for the conduct of a co-conspirator." Cannel, N.J. Criminal Code Annotated, cmt. 6 on N.J.S.A. 2C:2-6(b)(4) (2018). N.J.S.A. 2C:2-6(b)(4) provides "[a] person is legally accountable for the conduct of another person when . . . [h]e is engaged in a conspiracy with such other person."

In Bridges, the defendant attended a birthday party and became involved in an argument with another attendee, vowing to return with his "boys." 133

6

N.J. at 449. The defendant solicited two of his friends to return to the party, but not before they stopped off, and with the defendant's knowledge, retrieved two guns. Id. at 449-50. The defendant renewed the confrontation at the party. Id. at 450. The co-defendants at first fired the guns into the air, then into the crowd, killing one person, and injuring another. Ibid. The defendant, who did not shoot a weapon, was convicted of a number of possession of weapons charges as well as murder and aggravated assault. Id. at 451-52.

In construing N.J.S.A. 2C:2-6(b)(4), the Court in Bridges observed that the legislative history of the statute "support[ed] the conclusion that the liability for conspirators was intended to be broader than other measures of criminal accountability for vicarious crimes." Id. at 466. The Court held "that a co-conspirator may be liable for the commission of substantive criminal acts that are not within the scope of the conspiracy if they are reasonably foreseeable as the necessary or natural consequences of the conspiracy." Id. at 466-67.

> [A] conspirator can be held liable for the acts of others that constitute a reasonable foreseeable risk arising out of the criminal conduct undertaken to effectuate the conspiracy, and occurring as the necessary or natural consequences of the conspiracy. The substantive crime must be reasonably and closely connected to the conspiracy even though those crimes may not have been within the actual contemplation of the conspirators or within the scope of the conspiracy as originally planned.

A-2068-16T2

[Id. at 468.]

In Bridges, although the conspiracy did not "have as its objective the purposeful killing of another person, . . . it could be anticipated that the weapon might be fired at the crowd." Id. at 469.

Count one of the indictment against defendant alleged a conspiracy with Bartley with multiple objectives: conspiracy to murder or conspiracy to either possess a gun for an unlawful purpose or to unlawfully possess a weapon. At the close of the State's case, the trial court only granted a portion of defendant's application for a judgment of acquittal, agreeing without objection from the State, to acquit defendant on the conspiracy to commit murder objective. The court denied the balance of defendant's application, making it clear that it would charge the jury on Bridges under the other two objectives.

There was no error by the court when it did not dismiss the substantive charge of murder in this context. The holding in Bridges allowed defendant to be held liable for the acts of Bartley. There were two other conspiracy objectives that were charged. If the jury found a conspiracy under either objective and even though murder was not within the scope of the conspiracy, defendant still could be liable if the jury found that murder was "reasonably foreseeable as the necessary or natural consequences of the conspiracy . . . ." Id. at 467.

A-2068-16T2

The jury found that defendant conspired with Bartley to possess a gun unlawfully. There is nothing that precluded the jury from then finding that, when defendant solicited Bartley to get his gun and then to go with him to the house where defendant had just been fighting with Austin, it was reasonably foreseeable, as a necessary or natural consequence of that unlawful weapon possession that a shooting might occur, resulting in death. Thus, based on Bridges, the court was not required to acquit defendant on the murder charge.

The court instructed the jury on the substantive count of murder. It advised the jury that it had to determine if defendant engaged in a conspiracy with Bartley to either possess a gun for an unlawful purpose or unlawfully possess the weapon. Then, relying on Bridges, the court instructed the jury that it had to determine: (1) if the crime was closely connected to the conspiracy; (2) whether the crime was the natural and necessary consequence of the conspiracy; (3) whether the crime was objectively foreseeable or reasonably to be anticipated from attempts to execute the conspiracy; and (4) whether the crime was not too far removed from the objectives of the conspiracy. It then instructed the jury in the same manner for each of the lesser-included offenses: aggravated manslaughter and reckless manslaughter. The trial court also instructed the jury on counts three and four and on conspiracy.

9

"[A]ppropriate and proper [jury] charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)); State v. Green, 86 N.J. 281, 287 (1981) (requiring jury charges to provide a "comprehensible explanation of the questions that the jury must determine"). In reviewing the adequacy of the judge's charge to the jury, we must consider the charge as a whole in determining whether it was prejudicial. See State v. Figueroa, 190 N.J. 219, 246 (2007) (citing State v. Wilbely, 63 N.J. 420, 422 (1973)).

We reject defendant's argument that the charge was confusing or misleading. The text was drawn from the phraseology in the Court's opinion in Bridges. The trial court properly applied Bridges to the murder charge and then to the lesser-included offenses. There was no prejudice to defendant but for the obvious fact that Bridges provided legal support to hold him liable for Bartley's conduct; that result, however, was a consequence of the law, not the charge.

Defendant was convicted as a co-conspirator; defendant's arguments on appeal about accomplice liability are simply off-point and do not warrant our discussion. See R. 2:11-3(e)(2).

Defendant argues the court erred by denying his request to charge on self-defense or justification. Bartley testified that as Austin was in the doorway, he

stepped forward toward Bartley. He told the police, "he started coming at me. I could not see what he had in his . . . right hand."

A self-defense instruction must be given "[w]here the evidence could support self-defense as the justification for a homicide . . . ." State v. Gentry, 439 N.J. Super. 57, 67 (App. Div. 2015). "[T]he use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3-4a.

No one testified that Austin was armed, that he attempted to injure Bartley or that Bartley needed deadly force to defend himself. Bartley testified "[l]ike [Austin] came closer to the door and I pulled out [the gun] and shot." The record supports the court's analysis that Austin did not respond "in any kind of way that would, under the law, mitigate him being shot by Mr. Bartley." There was no abuse of discretion by the trial court on the self-defense or justification issue.

We do not agree that the trial court should have used a special verdict sheet as defendant contends. He argues that once the jury determined to acquit defendant of conspiracy to possess a weapon for an unlawful purpose, it should not have allowed the jury to deliberate on the aggravated manslaughter charge.

11

We already have determined that the court did not err by instructing the jury that it could consider the lesser-included offenses if it found conspiracy to possess a gun for an unlawful purpose or for unlawful possession. There is no need to further address this argument in a written opinion. See R. 2:11-3(e)(2).

II

During deliberations, the jury asked to see a transcript of Bartley's testimony. The court advised the jury there were no transcripts and "assume[d] that [they] want[ed] his entire testimony played back." If that were incorrect, the court asked the jury to write another note describing what portion of the testimony it wanted played back. The jury advised by note that it wanted to rehear the beginning of Bartley's testimony where he "recounts"[2] the details of the phone call with defendant before the shooting. The court replayed those portions.

Defendant argues the court should not have asked the jury to be more specific and that this "signaled to the jury it did not want to hear Bartley's entire testimony." Defendant contends the court should have given a cautionary instruction not to focus on the play-back to the exclusion of other testimony.

---

[2] The jury clarified that the note said "recounts" rather than what it appeared to say, "recants."

A-2068-16T2

It was incumbent on the trial court "to ascertain the will of the jury." State v. Wilson, 165 N.J. 657, 661 (2000).  The jurors were not required "to watch or hear more testimony than they asked for."  State v. Miller, 205 N.J. 109, 123 (2011) (citing Wilson, 165 N.J. at 661).

The court did not err by playing only a portion of Bartley's testimony. There was no prohibition on asking the jury for clarification, particularly where the court told the jury it otherwise would play all of the testimony.  We agree the trial judge properly exercised his discretion in "clarify[ing] what testimony the jury want[ed] repeated."

The trial court did not issue a limiting instruction after re-playing the requested portion of Bartley's testimony.  In Miller, the Court clarified that "at the time the testimony is repeated, judges should instruct jurors to consider all of the evidence presented and not give undue weight to the testimony played back."  205 N.J. at 123.

Defendant did not request this instruction.  In the jury charge, the trial court instructed the jurors to consider all the evidence and to base their determination on same. We assume the jury followed the instructions. State v. Nelson, 173 N.J. 417, 447 (2002) (quoting State v. Manley, 54 N.J. 259, 271 (1969)) ("[t]here can be no assumption that the jury did not faithfully follow the

A-2068-16T2

[court's] admonition"). Having reviewed the record, we conclude the trial court's failure to provide the jury with a <u>Miller</u> instruction at the time Bartley's testimony was replayed did not constitute an error "capable of producing an unjust result." <u>See</u> <u>R.</u> 2:10-2(a).

III

One of the first patrol officers to respond to the shooting testified about the victim's condition and the arrival of the EMTs and paramedics. When asked "[d]id you later learn who the victim was," and "who was it," instead of giving Austin's name, the officer responded "it was the son of one of our retired officers." This prompted an immediate objection and request for a mistrial. The court continued the trial, gave counsel the opportunity to brief the issue, and instructed the jury:

> Folks, let me just tell you that the status of the victim and who he may be related to is completely irrelevant and not significant in any way to your deliberations and consideration of whether or not the State meets its burden of proving their case beyond a reasonable doubt on each of the elements . . . . So please disregard that. It will be stricken from the record. And it's not to factor into your decision making in any way, shape or form.

The court heard argument on the mistrial request the next day. Defense counsel noted that some spectators in the courtroom wore buttons with a picture of Austin and his infant children and others wore golf shirts indicating a law

14

enforcement background. And, although defense counsel said he was not suggesting there was any inappropriate behavior, he requested the removal of the buttons and to do something to "strictly supervise these proceedings" to reduce the prejudice.

In denying the mistrial request, the court noted that:

> in today's world, public perception of police ranges from deification to demonization and everything else in between and as history has illustrated any suggestion that public perception of police remains limited to a universally recognized deference, preference or reverence based on their suggestion premised on some fanciful notions of days gone by. These days we readily observe within our judicial system and within society at large, that people are likely to assign less weight to the testimony of a police officer, less than that off any other person simply based on the status of that police officer.

Defendant argues the trial court should have granted its motion for a mistrial. A "decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court." State v. Harvey, 151 N.J. 117, 205 (1997). Such a remedy is an "extraordinary" one, to be "exercised only when necessary 'to prevent an obvious failure of justice.'" State v. Yough, 208 N.J. 385, 397 (2011) (quoting Harvey, 151 N.J. at 205). Accordingly, "an appellate court should not reverse a trial court's denial of a mistrial motion absent a 'clear showing' that

'the defendant suffered actual harm' or that the court otherwise 'abused its discretion.'"  Ibid.

We agree with the trial court that it was irrelevant that Austin was the son of a police officer.  The court promptly and properly struck that information from the record and swiftly gave an appropriate curative instruction.  Defendant does not explain why the information was prejudicial or why the curative instruction was insufficient.  We discern no abuse of discretion in denying the motion for a mistrial.[3]

Defendant's motion for a mistrial, and later to set aside the verdict alleged that the victim's family "wore inflammatory and prejudicial clothing" during the trial and the court failed to control the environment.  The court found that the families were not precluded from wearing buttons, that they were small and they did not depict anything prejudicial.  There already had been testimony that the

---

[3]  Although not referenced in defendant's brief, defense counsel asked Bartley on cross-examination whether he knew when he was arrested whether Austin was the son of a police officer.  Bartley responded "yes."  Defense counsel asked him if the police beat him up and he again responded "yes" describing that one officer kicked him in the mouth, another one "kept kicking me in my side and then start standing on my neck.  And then, when he picked me up, they was like smacking my head against the trucks."  One would think that if there were a favorable view of the police, this testimony might have limited that.

victim had infant twins. With respect to the family's conduct, the court noted that it did not have to admonish family members about their conduct.

Victims' survivors and other spectators in the courtroom may "wear a button not exceeding four inches in diameter that contains a picture of the victim, if the court determines that the wearing of such button will not deprive the defendant of his right to a fair trial . . . ." N.J.S.A. 52:4B-36.1(b). The court did address the audience about the emotional nature of the case but the record showed the court was in full control of the courtroom throughout the trial. We have carefully reviewed the record and we find no abuse of discretion by the court in its orders denying the motions.

IV

Defendant was sentenced to an aggregate term of twenty-three years subject to an eighty-five percent parole disqualification under NERA and five years of parole supervision after release. Defendant argues the sentence was imposed without properly weighing the aggravating and mitigating factors.

Our review of a sentencing determination is limited. See State v. Roth, 95 N.J. 334, 364-65 (1984). We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). We must determine whether:

17

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alterations in original) (quoting Roth, 95 N.J. at 364-65).]

"A judge's sentencing analysis is a fact-sensitive inquiry, which must be based on consideration of all the competent and credible evidence raised by the parties at sentencing." State v. Jaffe, 220 N.J. 114, 116 (2014). Where the aggravating factors predominate, the sentence imposed can be toward the higher end of the range, giving appropriate weight to all the factors. State v. Case, 220 N.J. 49, 64-65 (2014).

The court found aggravating factor three,[4] the risk defendant would commit another offense, because the defendant was quick to "translat[e] [his] anger into what ultimately resulted in the death of Mr. Austin," and further failed to "express[] any remorse or anything of such theme towards the victim." In finding aggravating factor nine,[5] "a need for general deterrence for the

---

[4] N.J.S.A. 2C:44-1(a)(3).

[5] N.J.S.A. 2C:44-1(a)(9).

18

community," the trial court discussed gun violence and the need for "a message sent to the community that it's just not going to be tolerated" as well as the need to deter defendant from gun violence. Defendant conceded that aggravating factor nine applied.

The court rejected mitigating factor eight, defendant's conduct was the result of circumstances unlikely to recur, because of defendant's anger issues and also rejected factor thirteen, that defendant was a youth who was substantially influenced by another more mature person, because it was defendant who asked Bartley to become involved.[6] It rejected mitigating factor two,[7] no contemplation of serious harm, based on Bridges, because defendant should have foreseen that introducing a gun in a hostile situation might result in serious harm. Mitigating factor three[8] did not apply because defendant was angry but not enough to constitute strong provocation. The court rejected factor four,[9] substantial grounds tending to excuse or justify defendant's conduct,

---

[6] N.J.S.A. 2C:44-1(b)(8), (13).

[7] N.J.S.A. 2C:44-1(b)(2).

[8] N.J.S.A. 2C:44-1(b)(3).

[9] N.J.S.A. 2C:44-1(b)(4).

because "it just was not there." Factor six[10] did not apply because defendant could not compensate for the victim's death. The court could not find mitigating factor nine,[11] that defendant's character and attitude was such that he was unlikely to commit another offense, based on the evidence.

Finding there were no mitigating factors and that the aggravating factors outweighed the mitigating factors, the court imposed a sentence at the higher end of the range. He then analyzed the Yarbough[12] factors, imposing the sentences concurrently.

We find no abuse of discretion by the court in defendant's sentence. The trial court explained its reasoning on each factor, weighing them and rendering a sentence that was within the judicial guidelines and was not shocking to the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] N.J.S.A. 2C:44-1(b)(6).

[11] N.J.S.A 2C:44-2(b)(9).

[12] State v. Yarbough, 100 N.J. 627 (1985).

A-2068-16T2